Gaston, Judge,
 

 having stated the pleadings as above,proceeded as follows: The controversy between these parties, depends mainly on the matter put in issue, byjhe pleadings on the cross-bill. In regard to this, though many depositions have been taken, the only material facts established by them for the present purpose, are, that the complainant in the cross-bill was much addicted to intoxication; that he very often'visited Carthage, habitually every Court, and when there, lodged with Person, and
 
 was generally drunk.
 
 The witnesses differ as to the effect produced on him by drunkenness, some expressing an opinion that he could not be cheated when' drunk, and one Mr. Dowd declaring that in
 
 his
 
 judgment, it rendered him exceedingly stupid, and an easy prey to a shrewd man, in whom he reposed confidence. Person was a man attentive to business, intelligent and exact, and possessed the confidence of McLeod and the community in general. The tract in question was well worth $3,000. The complainant was a man disposed to run in debt, and to evade the payment of his debts by disingenuous means.
 

 To these facts are to be added the very material facts disclosed by the exhibits. It is to be regretted that these have not been as full on either side as they might have been rendered. We could have wished to see the two $500 notes that were reduced to judgments, and also a copy from the books of the deceased of the complainant’s entire account therein. We are satisfied that they have not been withheld to prevent the ascertainment of truth; nor do we draw any unfavourable inference, because of their not having been produced. They would have shed light, however, on parts of the transaction, over which hangs some obscurity.
 

 From the exhibits, it is to be collected, that Person executed to McLeod, in May, 1823, as the consideration in part of the alleged purchase of the land in dispute, four notes, payable according to the defendant Morrison’s representation,
 
 *228
 
 jn four different years, that is, as we understand him, in 1824, 1825, 1826 and 1827. Two of these notes are produced, each for $250, one of which became due in May, 1825, and ^le ot^ler iQ May, 1827 — and we are left to infer, and so take the fact to be, for the present, that the two notes of $500 eac^> severally became due in 1824 and 1826; although, from the statement in the answer of McLeod to Morrison’s bill, iQ September, 1832, wherein he claimed to be due thereon for principal and interest, the sum of $1,320, we suspect that neither became due earlier than 1826. The only other part of the consideration was a credit of $500, to be allowed to McLeod in account. The most favourable representation for those who set up the transaction as an absolute purchase, then, is, that the land was bought for $500 cash, and $1,500 to be paid in four annual alternate instalments of $500 and $250, without interest^ — that is, for about the sum of $1,800 cash. But, accompanying the conveyance, and executed with it, is the instrument called by the defendants, a bond for a re-conveyance, but alleged by the plaintiff, to have been executed, or at least
 
 represented as a defeazance.
 
 It is one of an extraordinary character. It is a bond from Person to McLeod, in the penal sum of $500 only — and after reciting that the latter hath, on that day, conveyed the land in question to the former, in consideration of the sum of $2,000, to the latter in hand paid,
 
 “but to be re-conveyed,
 
 on condition that he shall, at or before the expiration of
 
 three
 
 years from the date, pay to Person the aforesaid sum of $2,000, with interest from the date,” it declares, that in case McLeod shall fail to comply with the conditions above mentioned, at the time above prescribed, the obligation shall be void; but, in case of a compliance by him, or his lawful representatives, and the said Person, or his heirs, executors, and administrators, shall then refuse to re-convey, that the obligation shall be in full force — and it further provides, that McLeod and his present family, shall be permitted to retain possession of so much of the land as may be necessary for them to cultivate, “during the aforesaid term of three years, given for the re-payment of the purchase money.”
 

 Subjoined to this instrument, is another, in the following
 
 *229
 
 words: “ agreement between Neill McLeod, Esq., and iamin Person, the said Neill is, within some short time, to
 
 %
 
 ,. : . . . ’ deliver to the said Benjamin,
 
 tins
 
 instrument of writing, and
 
 three
 
 notes or bonds which he holds against the said Benjamin, two of them for $500 each, and the other for $250, making in all $1,250; at which time the said parties are to enter into the following agreement, respecting the within described land, viz: the said Neill is to remain in possession, until the 1st of June, 1827, on paying fhe interest of the purchase money to the said Benjamin; during which time, both parties, by mutual agreement, will be permitted to sell said land; and the profits arising therefrom, after paying to the said Benjamin the purchase money, with interest, agreeably to contract, to be equally divided between the said Neill and Benjamin; and in case such sale shall not have been effected, at the expiration of the time above mentioned, then
 
 one
 
 of the parties shall sell
 
 his interest
 
 in said land to
 
 the
 
 other, he offering the highest price to be the purchaser, on complying with the true spirit and meaning of the contract to be entered into,” dated May the 12th, 1826. In October, 1826, Person gets a surrender of the note for $250 — but, under what circumstances, does not appear, and in the summer of 1827, takes possession of the land.
 

 It seems to us, that the complainant in the cross-bill, is entitled to the relief he asks for. Either the contract between the parties was for an absolute conveyance of the land, and a special engagement for a re-conveyance, as defendants insist, is literally testified by the instruments — or, it was for' a conditional conveyance of the land, to compel the payment of money due, and the re-payment of money to be advanced. If the former, the contract must be set aside, as one uncon-scientiously extorted from a drunken and confiding man, upon his paying what may be justly due; and so, he is entitled to redeem. If the latter, then in its nature, it is but a security for a debt and loan, and therefore he is entitled to redeem.
 

 Viewed, in the first light, the contract bears Unequivocal marks of having been obtained by imposition. The land was unquestionably worth $3,000, and it is bought at the nominal price of $2,000. Not a cent of money is actually advanced, but a credit is to be allowed McLeod in the tavern
 
 *230
 
 and store of $500 — and the remaining1 $1,500 of the price is to be paid in instalments, one of which, at least, is not to become due until four years after the transaction. It is a de-dared condition of the sale, that the vendor may re-purchase, by
 
 returning
 
 the $2,000 with interest from the date, within,.,
 
 three
 
 years — that is to say, by.
 
 returning
 
 the price, with interest,
 
 before
 
 he is entitled to receive the price. And, if he shall faithfully execute this condition on his part, and restore the so called purchase money, and interest, within the three years, and Person choose to keep the land and money so restored, he may do so on paying $500. If this was really the bargain made by Person, with his old drunken friend, it is not surprising, that he was desirous to conceal it even from his own clerk.
 

 We are not bound, however, to take this view of the transaction,.and charity should induce, while justice will permit us, to regard it as in truth, batan awkward attempt to pledge the land, as security 'for what was due, and the money to be advanced. For this purpose, a conveyance was made of the legal title to Person, the creditor and intended lender, and, McLeod the debtor, and borrower, received an instrument, stating the
 
 conditions
 
 of that
 
 conveyance.
 
 Witnesses were called upon to notice the true amount of the present debt, and the extent of the future advances contemplated and secured by Person’s notes, in consideration whereof, the conveyance was made; but the
 
 conditions
 
 of that cenveyance were not disclosed to them, but intended to be declared in the instrument given to the party, to claim the benefit of them. Whatever appearauces the transaction might wear before the witnesses — and however Person might desire, in order to save him the trouble or expense of a foreclosure, that its full character should not be known to them, he might have supposed this paper reasonably sufficient to.sh'ew McLeod’s right to redeem; and in case that right were not exercised, or if it were abandoned, that the surrender of the paper would be all that was necessary to make the conveyance indefeasible. He would thus, indeed, have the staff very much in his own hands; but, notwithstanding, he might intend to render or allow to McLeod what upon the whole he should deem just.
 
 *231
 
 The agreement of the 12th of May, 1826, although certainly not free from obscurity, and, in one particular, not intelligible, furnishes strong evidence that the deed of conveyance was not intended to be absolute, but designed' as a security. The three years allowed for redemption, were on the eve of expiration. But $760 of the moneys, whether due on account or contemplated to be advanced, had been received. The re-payment of
 
 this sum
 
 was not convenient, and another plan for securing it to Person was to be adopted. The notes for the remaining $1,250 were to be returned, and no further advances made. .McLeod was to reside on the land another year, paying interest on what had been advanced; and, during-that year, the land was to be sold, and the money advanced (still, indeed, called the purchase money,) was to be restored. The stipulation therein in regard to the equal division of the
 
 profits
 
 of the
 
 sale,
 
 is indeed wholly unintelligible; but there is a distinct recognition, notwithstanding all that had passed between the parties, that nevertheless, each •yet “ had his interest in the land,” which might be the subject of a sale, either from one to the other, or by both to third persons.
 

 Regarding the conveyance of the land as having been rpade to secure to Person what was then due, or might thereafter become due to him, from McLeod, we do not find any such advised surrender or abandonment of the right of redemption arising thereon, as to justify us in rejecting his claim to redeem.
 

 It will be declared, therefore, that the complainant in the cross-bill has a right to redeem the land in question, upon paying what may be found justly due from him to the estate of Benjamin Person; and, to ascertain that amount, there must be a reference to take an account of all debts contracted with the said Benjamin by the said complainant, and all moneys advanced to or for him by the said Benjamin, for the securing of which the conveyance was made; and also an account of the rents and profits received from the said land, and of the waste, if any thereon Committed, by the said Benjamin, his administrators and heirs, saving to him and them all just allowances; and for the more effectually taking of these ac
 
 *232
 
 counts, the commissioner is to be empowered to receive testi-m'ony by depositions or examine witnesses, and also to examine the parties on interrogatories, and to compel the production of books and other documents.
 

 Per Curiam. Decree accordingly.