PeaesoN, J".
 

 1st. The deed of trust directs the payment of certain debts therein set out, and particularly described by stating the amount of each, to whom due, how due, when due, and the date thereof, and concludes with these
 
 words
 
 — “ all which debts shall be paid in the
 
 order in which they become due.”
 

 The fund turns out not to be sufficient to pay all these debts, and the order of payment prescribed, works an inequality to the prejudice of the defendant Cherry, who is liable, as surety, upon some of the debts which are the last to fall due. He insists that the debts shall be paid
 
 jpro
 
 rata, under the maxim that
 
 “
 
 equality is equity.”
 

 "With every disposition to yield to the force of this maxim, we are unable to find any ground which will justify a departure from the order of payment so expressly laid down.
 

 It was then suggested that the words “become due” look to the future, and, consequently, exclude those debts which were past maturity and already due at the date of the deed.
 

 We cannot give this effect to the words, because these debts are particularly enumerated as being among the debts which are to be paid, in the order in which they become due, which repels the idea that reference .was made only to such debts as wore not then due.
 

 2nd. At the time the deed of trust was executed, the defendant S. B. Spruill was indebted to Clary and Spruill for a store account. The defendant S. B. Spruill insists that he has the right to deduct the amount of this debt from the amount of his liabilities for Clary and Spruill, without regard to the trust. This debt, among others, is transferred to the trustee, to be collected and paid out as a part of the fund, in the order prescribed. At law, the action would be in the
 
 *28
 
 name of Benjamin J. Spruill, surviving partner ; and Samuel B. Spruill, provided lie lias paid an equal amount of the debts for which he is liable as surety, would have a right to extinguish this debt and bar the action by the plea of set-off. But the parties are in a Court of Equity, where other considerations are involved. To say nothing of the fact that the defendant Spruill lias made no payment as surety, and is, consequently, not as yet a creditor, there is the fact that the deed is made to him as one of the trustees, and the further fact that lie is the person mainly interested and benefitted by its provisions; so, the question is, can he claim
 
 under
 
 the deed, and, at the same time,
 
 against
 
 it ? We think it clear, in analogy to the doctrine of election, that while he is claiming under the deed, and insisting that the trust fund shall be collected and paid out in the order prescribed, it is against conscience to set up a right by which the fund will be diminished, and the security, which was executed in pursuance of an arrangement between him and others, for their mutual benefit, defeated
 
 pro tanto.
 
 As lie is so largely ben-efitted, we assume that lie elects to claim under the deed, and it will bd declared that the store account due by him, constitutes a part of the trust-fund, which lie is not entitled to diminish by way of set-off, or otherwise.
 

 3rd. Among the debts enumerated, is one with this descrip
 
 tion
 
 — “ A draft on the same, (Cherry, Cahill
 
 &
 
 Co., of Norfolk,) drawn by the same, (B. J. Spruill.) at ninety days ; dated 17th December, 1854, with W. P. Gurley as endorser, for the sum of three thousand one hundred dollars.” No debt answering this description precisely, exists. But there is a debt which answers every particular of the description, save that it is dated on the 7th of December, 1854, instead of the 17th day of December, 1854. The question is, must this debt be rejected? If not, must it be ranked as a debt becoming due ninety days after the 7th, or the 17th of December, 1854?
 

 This is a latent, as distinguished from a patent ambiguity, and presents a question of identity, as distinguished from a
 
 *29
 
 question of construction, which is fully discussed in
 
 The President, &c., of the Deaf and Dumb Institute
 
 v.
 
 Norwood,
 
 Bus. Eq. 65. The difficulty occurs in fitting the description to the thing. If a debt, answering- the description in every particular, existed, that would be “the thing.” But there is no such debt. That under consideration answers the description in six particulars out of seven, i., e., it is a
 
 draft
 
 on Cherry and Cahill, of Norfolk, by B. J. Spruill, at ninety days, with "W. P. Gurley, endorser, for $3100. But it does not answer a part of the-seventh particular, i. e., it is dated the 7 th, not the 17th of December, 1854. So, it does not fit precisely ; the figure 1 before the 7 being the discrepancy.
 

 It would be strange if the legal effect of this slight variance were to render the deed inoperative in regard to this debt. It may be that, in
 
 special pleading,
 
 such a variance is fatal. But there is a distinction between pleading and deeds, wills, obligations and the like. In respect to the latter, the law gives them effect
 
 “ ut res ma'gis valeat guam
 
 pereat.” The reason of the distinction is a sound and practical one. “ If the name be mistaken in a
 
 writ,
 
 a new writ may be purchased of common right, but if it were fatal in
 
 leases
 
 and
 
 obligations,
 
 the benefit of them would be wholly lost, and, therefore, one ought to be supported and not the other.”
 
 The Mayor of Linn
 
 Regis, 10 Rep. 120;
 
 Mayor of Stafford
 
 v.
 
 Dolton,
 
 1 Bos. and Pul. 41. Ve think it clear, under the maxim
 
 ut res magis valeat
 
 &c., that an error-in a part of one, out of seven particulars of description, is not fatal, and that the debt in question is sufficiently identified by those particulars of the description in which there is no variance, and that the other particular, or the disagreeing part of it, may be rejected as su-rplusage.
 

 We do not put our decision on the ground of correcting a mistake ; for equity does not interfere for that purpose against creditors, but leaves them to stand on their rights. Our decision is made under the rule that where more than one description is given, and there is a discrepancy, that description will be adhered to, as to which there is the least likelihood
 
 *30
 
 that a mistake would, be committed, and that be rejected, in regard to which mistakes are more apt to be made. This is a rule of frequent application. If a tract of land be described by natural objects, or corner trees, and also by course and distance, and there turns out to be a discrepancy, the latter description is rejected.
 

 So, if a father had made a parol gift of five negroes to his son, and in his will says, “ I give to my son five negroes, to wit, (giving their names,) being the negroes I have heretofore put into his possession,” and it turns out that the will names the wrong negroes, that description will be rejected, and the other description adhered to ; for he is more apt to be mistaken as to the names, than as to the fact that they are the negroes which he had before put into his son’s possession, as to which there can be no mistake;
 
 Lowe
 
 v. Carter, 2 Jones’ Eq. 383. This does not conflict with
 
 Barnes
 
 v. Simms, 5 Ire Eq. 392; for in that case there was but a single description, to wit, the name. If that had been rejected there would have been no description at all. In
 
 Knight
 
 v.
 
 Bunn,
 
 7 Ire. Eq. 77, the note of D. A. E. Bicks did not correspond with the description in the deed in a
 
 singlepartieulcvr,
 
 and by rejecting the particulars of description which did not correspond, no description would be left.
 

 In our case we can reject one description — that in regard to the date — and still have six other particulars of description in regard to all which there is a full correspondence. So, the question is reduced to this — Is it more likely that there should be an error in
 
 sixpa/rtieulars
 
 than in
 
 one ?
 

 As the debt in question fits the description, the date being rejected as erroneous, it follows that it must be paid according to the true date.
 

 PbR CueiaM. Decree accordingly.