W. M. RITTER LUMBER COMPANY AND HAZEL LUMBER COMPANY v. MONTVALE LUMBER COMPANY, J. E. COBURN, AND JOHN PROCTOR.

(Filed 24 May, 1915.)

**1. State's Lands—Grants—Surveys—Lines and Boundaries—Extrinsic Evidence.**

The principle applied to the construction of grants of land from the State, or by deed, that the actual location of a line made before or cotemporaneously in a survey will control a variance made in the description of the grant or deed, does not obtain unless the line has been marked and cornered for the purpose of a correct description in the grant or deed, and then only when the line marked is so connected with the deed, either by intrinsic or extrinsic evidence, as to create a presumption as to the intent of the grantor that it should be one of the boundaries.

**2. Same—Intent.**

Where the application of the principle is permissible to show by parol evidence that the lines described in a State's grant of lands is not in con-

formity with the lines of a survey made in contemplation of the grant, the vital question is the intent of the grantor, and the rule admitting parol evidence should be administered with caution and not carried beyond its well defined limits of serving only to locate the land intended to be conveyed by operating to aid the description contained in the deed.

## 3. Same—Corners—Conduct of Parties.

In order that the line of a survey may vary the description given in a grant of land, it is required that it should have been run and marked before the execution of the deed or cotemporaneously therewith, and intended by the parties as one of the lines of the lands to be conveyed, and this intention must be clearly inferred from the conduct of the parties in regard thereto, the intention being as essential as the fact that the line was surveyed and a corner made.

## 4. Same—Triangulation.

Where the parties in an action for lands claim respectively under a junior and senior grant from the State, and the controversy depends upon the location of the dividing line between the two grants, represented on the map by lines from an admitted beginning point, A, the one claiming it to be from A to B and other from A to D, and it appears that the line from A to D was too difficult of survey, and the parties established it by means of triangulation, that is, by running from A to B and then to D, the land in controversy lying within the triangle A, B, and D:  *Held*, that it being the intention of the parties that the true line should run from A to D and that the line was partly run from A to B, and a corner made at B was only for the purpose of ascertaining the former line, by the stated method, for the purposes of the description in the grant, the intention of the parties will control the call in the grant for a line from A to B, and especially when the latter is coupled with a call for the line of another tract, which is well established and also is in conformity with other points or corners given in the grant.

## 5. State's Lands — Grants — Extrinsic Evidence—Natural Boundaries—Conflicting Calls—Interpretation.

Where it is the evident purpose of the grant of land, as gathered therefrom, that one of its lines shall coincide with the line of B and run therewith to his northeast corner, and corner there at a sugar maple, which line and tree are definitely ascertained and located, it may not by legal interpretation be made to run beyond to a given, fixed, or natural boundary, as in this case, to the "intersection of the head of Defeat Ridge with the Tennessee line," for such would violate the evident intention of the parties, and the language should be construed as if it read, "cornering at B's northeast corner, supposed to be on the Tennessee line at the head of Defeat Ridge" (*Cherry v. Slade*, 7 N. C., 82, cited and applied); and it is *Further held*, that the mere understanding of the parties, without more, as to the location of B's line and northeast corner, cannot control the call, as an actual or practical location of the line.

## 6. Appeal and Error—Reference—Findings.

The findings of a referee, confirmed by the judge, will not be disturbed on appeal when there is evidence to support the findings.

## 7. Deeds and Conveyances—Evidence—Declarations—Surveys.

Declarations of a person, in favor of his own interest at the time, as to the location of a divisional line or boundary of lands are incompetent evidence as to those claiming under him, and in this case it is held that certain other of his declarations concerning that line were properly limited by the court to what was actually done on the survey.

6—169

**8. Deeds and Conveyances—Evidence—Declarations—Interests.**

Where the declarant has parted with his interest in lands, what he may thereafter say about the lines and boundaries cannot be used against those claiming under him, irrespective of the question of *litem motam.*

**9. Evidence—Depositions—Testimony of Witness—Effect.**

Depositions taken in a cause, which have been destroyed before they were opened and passed upon, are not competent as evidence (Revisal, sec. 1652); nor can a witness testify as to their contents, especially where he is not able to give their substance, but merely the impression they made upon his mind.

**10. Evidence—Boundaries—Appeal and Error—Harmless Error.**

*Held,* in this case, that certain testimony of a witness as to line trees upon a boundary of lands in dispute was not sufficiently definite; and were it otherwise, its exclusion would not be reversible error.

**11. Evidence—Declarations—Attorney and Client.**

The declarations of an attorney respecting the boundaries of his client's land are not binding upon his client, and incompetent as evidence in an action to determine them.

**12. Evidence — Deeds and Conveyances — Grants—Copies—Lost Originals— Search—Interpretation of Statutes.**

A duly certified copy of the registry of a grant is competent evidence without the necessity of accounting for the nonproduction of the original (Revisal, sec. 988), and if by affidavit a material variance between the copy and the original in such entry is suggested, the court by rule or order may require the production of the original of such deed, in which case it must be produced or its absence duly accounted for according to the course and practice of the courts, which was sufficiently done in this case.

**13. Evidence—Rejected Instructions.**

It was incompetent, in this case, to show that the court refused certain instructions in another suit, the same being *res inter alios acta.*

**14. Evidence—Junior Grants—Prior Surveys—Boundaries.**

While the description in a junior grant may not be evidence of the location of lines and boundaries of a senior grant, the rule does not apply when the survey to establish the line in dispute was made prior to the date of the senior grant; and in this case the map and certificate of survey were properly admitted as evidence in corroboration.

**15. Deeds and Conveyances—Corners—Declarations.**

Where the location of a certain corner of lands is relevant and material to the controversy, testimony as to a conversation between a witness and others in relation thereto was properly excluded where the witness could not name those present at the time or give the substance of what was said, but only the impression on him.

BROWN, J., dissenting; CLARK, C. J., concurring in the dissenting opinion.

APPEAL by both parties from *Carter, J.,* at Special June Term, 1914, of SWAIN.

This action was brought to quiet the title to a large tract of land in the county of Swain, formerly Macon, on the waters of Hazelnut Creek, and alleged to be covered by a grant of the State to W. L. Love, and for damages on account of a trespass upon said land by the defendants. The

case was referred to Hon. J. D. Murphy, who filed a report, which was reviewed by Judge Carter upon exceptions. We cannot do better than insert here an extract from the findings, showing the contentions of the parties:

"The plaintiffs claimed the land in controversy by mesne conveyances under State Grant No. 3290, issued to W. L. Love, assignee of B. L.

Sawyer, bearing date 3 May, 1872, and recorded in the register's office for Macon County, in Book N, pages 12 and 13, on 18 June, 1873, and also registered in Swain County, in Book O, page 601, on 3 October, 1894. The first call in Grant No. 3290 is as follows: 'On the waters of Hazelnut Creek, beginning at chestnut oak on the trail leading from the mouth of Sugar Fork Creek to the Deep Gap, beginning and run-

ning with Col. T. D. Bryson's line 1,800 poles north to the Tennessee State line at the head of Defeat Ridge, cornering with Bryson's northeast corner.' From the end of the first call the grant runs in a general easterly direction with the top of the Smoky Mountain by various calls to a buckeye on the top of Bald Ridge; thence down the Bald Ridge to a white oak at the high rocks, thence to the beginning. It was admitted that the beginning call of Grant No. 3290 was at the point marked 'A' on the 'Court Map.' The plaintiffs contended that the first line of said grant runs along the Deep Gap or Forester Ridge in a northerly direction to the point on said map marked 'B,' Thunderhead, being at the point where Defeat Ridge runs up to and forms a part of Thunderhead, and that from there it ran easterly with the Tennessee and North Carolina State line, passing the point marked 'Sugar Maple' at 'D' on the 'Court Map,' and thence continuing easterly to the Bald Ridge, some distance east of the sugar maple. The defendants claim title to the land in controversy, under State Grant No. 138, issued to George S. Walker, bearing date 8 March, 1881, and recorded in the office of the register of deeds for Swain County in Book B, page 476, 20 April, 1881. One of the calls in Grant No. 138 extends from the chestnut oak at 'A' on the 'Court Map' in a northeasterly direction to the sugar maple at the head of Big Chestnut Ridge, being the point marked 'D' on the 'Court Map,' and the defendants contended that the first call of Grant No. 3290 must run with this call in the Walker grant from the point 'A' on the 'Court Map' to the point 'D.'

"It was admitted that the line A-D was not actually run and marked (throughout its entire length) before the grant was taken out, but the defendant offered evidence tending to show that the line was actually run and marked for a short distance from the chestnut oak at A in the direction of the sugar maple at D, and for a short distance from the sugar maple D in the direction of the chestnut oak at A; but it was contended by the defendants that the line was ascertained by a method known to surveyors as triangulation and by platting, except as to what had been actuually run as aforesaid. By these adverse contentions of parties, the triangle A-B-D-A defines the territory in controversy."

The referee found as a fact that the line A-D was marked for a short distance at both ends, and the court, in its general findings of facts, states that it was marked at its northeast end from the sugar maple at D in the direction of the chestnut oak, the place of beginning at A, the latter being admitted by the parties to be the beginning corner of Grant No. 3290. It was further found that in the survey made under the entries upon which Grant No. 138 was issued, the first line was run from A, at the chestnut oak, to B, at Defeat Ridge, not for the purpose of establishing that as a line of the T. D. Bryson tract, but for the purpose of triangulation, in order to fix the location and length of the line A-D,

that is, from the chestnut oak at A to the sugar maple at D, and this was done because it was represented that between the chestnut oak and the sugar maple the land was covered with thickets and infested with poisonous snakes. The method of triangulation was suggested by the surveyor, and it was adopted as a safe method of determining the line from A to D and as avoiding the dangers and difficulties of making a survey over the land between A and D. Both the referee and the judge have found as a fact that the line of the Bryson tract called for in Grant No. 3290 had been well established, and runs from A to D, and the northeast corner of the tract is at the sugar maple, or D on the map. It is also stated as a fact by the referee and the judge that when Sawyer, by Kelly, surveyor, made the survey for Grant No. 3290; it was intended by them that the line A-D between the chestnut oak and the sugar maple should be the first line of the survey and the tract of land to be granted. The court also found as follows: "In respect of the survey made in 1871 for Grant 3290, the B. L. Sawyer entries, the court finds that said survey began at the chestnut oak at 'A' and was carried to the point 'B' at Thunderhead, the same being the head of Defeat Ridge, *retracing the survey theretofore made in 1867, for the purposes heretofore stated,* and that from the point 'B' upon the second line of said survey the line was run easterly to the point where the Locust Ridge reaches the North Carolina and Tennessee State line, the second line of said survey, following the general course of the second line of the triangle made upon the survey of 1867, as above found, and passing about 102 poles to the eastward of the head of Big Chestnut Ridge. The court finds that B. L. Sawyer was present upon this survey, and that the intention of Sawyer and the surveyor upon said survey was to establish the chestnut oak at 'A,' a corner in the Bryson survey, as the beginning point in said survey, and that the western line of said survey should coincide with the eastern line of the survey of 1867, and that the northwest corner of said last (first) mentioned survey should be identical with the northeast corner of the Bryson survey of 1867. And in respect of both surveys it was found as a fact that the line from 'A' to 'B' was not actually measured, along said straight line, but was measured along the course of Deep Gap, or Forester Ridge, and that a corner was marked at the point where the first and second lines of the triangle made upon the Byrson survey of 1867 intersect at the State line at Thunderhead. Defeat Ridge is located as plaintiff claims, being the ridge going up between the prongs of Little River, in Tennessee, and the head of Defeat Ridge culminates at and with other converging ridges, and forms the easternmost knob of the group of knobs known as Thunderhead, on the State line between North Carolina and Tennessee, the said head of Defeat Ridge being at the point marked 'B' on the official map."

There were other findings of the referee, which were approved by the judge, and should be stated here, viz.: "I further find that B. L. Sawyer knew in 1871, at the time of said survey by M. L. Kelly, that there was no Bryson in line along and up said Deep Gap or Forester Ridge, and he further knew, as marker and guide of the surveying party under T. S. Siler, that the line of T. D. Bryson runs from a sugar maple at the head of Big Chestnut Ridge, at the point marked 'D' on the official map, to the point marked 'A' on the official map. I further find that in 1871, the said B. L. Sawyer knew that the true eastern line of the T. D. Bryson land ran from the sugar maple at the head of Big Chestnut Ridge in a southwestwardly direction to the chestnut oak at the point 'A' on the official map. I further find that the northeast corner of the survey of the T. D. Bryson line is at the sugar maple at the head of Big Chestnut Ridge at the point marked 'D' on the official map."

There are many findings of fact bearing upon the general question as to the location of the "Bryson line" and the first line of the tract described in Grant No. 3290 to W. L. Love, under which the plaintiff claims, but it is not necessary to set them out, as those stated will be sufficient for a clear understanding of the contentions of the parties and the question presented in this appeal.

The referee found with the defendants in the appeal, that the first line of plaintiff's Grant No. 3290 was the one from A to D, and not from A to B, as contended by the plaintiff, and that the plaintiffs are not the owners of the land covered by said grant or of any land west of the said line from A to D, except as stated and decided in the defendant's appeal, but that the defendant Montvale Lumber Company is the owner of the land covered by said Grant No. 3290, with the exception aforesaid, it being also a part of the land covered by Grant No. 138, issued to George S. Walker, and described by metes and bounds in the judgment. The judgment may be referred to for greater certainty.

Both parties appealed from the judgment. We will proceed now to the consideration of the plaintiff's appeal.

*Theodore F. Davidson, James H. Merrimon, Fred S. Johnston, and Landon C. Bell for plaintiffs.*

*F. A. Sondley, A. S. Barnard, A. M. Fry, and W. L. Taylor for defendants.*

### PLAINTIFFS' APPEAL.

WALKER, J., after stating the case: The right of the plaintiffs to recover depends upon the true location of the first line of Grant No. 3290, that is, as to land described in the grant which is not covered by any of the inside patents. The question as to the effect of the latter upon the rights and interests of the parties is presented by the defendant's appeal, and need not be considered here.

The contention of the plaintiffs is that the first line of that grant should be from A to B, as shown on the court map, while the defendants say that it should be from A to D.

We are satisfied that we cannot adopt the plaintiff's view, unless we hold that what was done by Sawyer and Kelly, when they made the survey in 1871, amounted to a practical location of the first line within the rule laid down in *Cherry v. Slade,* 7 N. C., 82, that where it can be proved that there was a line actually run by the surveyor, which was marked and a corner made, the party claiming under the patent or deed shall hold accordingly, notwithstanding a mistaken description of the land in the patent or deed. But the insuperable obstacle to the application of this rule is that the line must have been "marked and a corner made," and it must also appear that this was done for the purpose of making it a line of the tract of land or a call in the deed, for it is said in *Safret v. Hartman,* 30 N. C., 185, after quoting from *Cherry v. Slade,* as above: "This rule presupposes that the patent or deed is made in pursuance of the survey, and that the line was marked and the corner that was made in making the survey was adopted and acted upon in making the patent or deed, and therefore permits such line and corner to control the patent or deed, although they are not called for and do not make a part of it. Parol evidence being let in for the purpose of controlling the patent or deed by establishing a line and corner not called for, as a matter of course, it is also let in for the purpose of showing that such line and corner were not adopted and acted on in making the patent or deed, because the rule presupposes this to be the fact." It may also be added at this place that the rule was adopted, against the strong but ineffectual protest of the judges long since expressed, for the sole purpose of executing the intention of the parties to the grant, and not to defeat it, and it was under the stress of some "hard case," where a sense of justice prevailed over the long established and safe rule forbidding a written instrument to be contradicted or varied by parol evidence, that the rule was brought into being. But conceding fully its existence, and that it is too firmly imbedded in the law of boundary to be now disturbed, we are admonished that it should be administered with caution and not carried beyond its well defined limits. *Judge Pearson* once said that the rule was "a violation of principle" and should not be extended. *Safret v. Hartman, supra.* We may well say in this case, what was so well said in *Elliott v. Jefferson,* 133 N. C., 207, that the error of the plaintiff lies in a misapprehension of the application of the rule, that in case of a discrepancy a marked line controls the calls in the deed as to course and distance. This rule never applies unless the marked line is so connected with the deed, either by intrinsic or extrinsic evidence, as to create a presumption as to the intent of the grantor. The mere running and marking of a line can never convey the title to land, nor can it take the

place of a deed. At best, it can only serve to locate the land conveyed in the deed, and can operate only in aid of the deed. Admitting that a line is run in contemplation of a deed, it does not bind the grantor, as a different contract may be made or the line subsequently changed. As no title can vest except by the execution of a deed, the vital question is the intent of the grantor at the time of such execution. ˙It was also stated in that case that "Wherever a marked line or other natural object is permitted to vary the description called for in the deed, it is always in pre-·sumed furtherance of the intent of the grantor in the execution of the deed. In other words, it is to carry out the true intent of the deed, and never in derogation thereof. This principle is clearly recognized in the authorities cited by the plaintiff himself, as will appear from the following extracts: . . . The doctrine thus laid down is in full accord with the principles enunciated and the cases cited in *Bowen v. Gaylord*, 122 N. C., 816, and is sustained by the general current of authority here and elsewhere. In the construction of all deeds and grants there is one essential object to be kept in view, and that is to ascertain the true intent of the grantor and to give full effect to that intention when not contrary to law. All rules of construction adopted by the courts are simply means to a given end, being those methods of reasoning which experience has taught are best calculated to lead to that intention. Hence, all authorities unite ·in saying that no rule can be invoked, no matter how correct in its general application, that tends to defeat the intention of the grantor. This doctrine is of such universal acceptance as to require but few citations, more to illustrate its extent than to prove its existence."

So we see that the ˙very foundation of the rule is the presumed intention of the parties to the grant, and the only excuse for it, as it is opposed to the general principle, is that it enables us to ascertain what the intention was in respect of the boundary.

It may be well here to reproduce some of the comments of this Court upon the rule. and its application, as what has been thus said is most pertinent to the facts of this case, as found by the able and learned referee and judge. The question as to the extent of the rule and the manner of its application was presented in the oft-cited case of *Reed v. Schenck*, 13 N. C., 415, where *Chief Justice Henderson*, with his usual clearness and acumen, thus refers to the rule: "For many years we have in all cases, I believe, except one, adhered to the description contained in the deed, and it is much to be. lamented that we do not altogether. The case to which I allude is where the deed describes the land by course and distance only, and old marks are found corresponding in age, as well as can be ascertained, with the date of the deed, and so nearly corresponding with the courses and distances that they may well be supposed to have been made for its boundaries, the marks shall be taken as the

*termini* of the land. This is going as far as prudence permits; for what passes the land not included by the description of the deed, but included by the marked *termini?* Not the deed; for the description contained in the deed does not comprehend it. It passes, therefore, either by parol or by a mere presumption. As far as we know, there has been no series of decisions by which the description in the deed is varied by marks, unless they were made for the *termini* of the land described in the deed, or supposed to be so made, and to which it was intended the deed should refer, or to which it was supposed the deed did refer, or rather supposed that the courses and distances correspond with the marks, and that the same land was described, whether by course and distance in the deed or by the marked *termini.*" And in *Baxter v. Wilson,* 95 N. C., 138, *Justice Ashe,* with equal force and clearness, states the object and defines the limit of the rule. He said: "For instance, when there has been a practical location of the land, as when it can be proved that there was a line actually run and marked and a corner made, such a boundary will be upheld, notwithstanding a mistaken description in the deed. *Cherry v. Slade,* 7 N. C., 82. The construction has been adopted by our Court to carry out the intention of the parties when it is clearly made to appear, and to effect that object course and distance will be disregarded if the means of correcting the mistake be furnished by a more certain description in the same deed, and especially will it be so when some monument is erected contemporaneously with the execution of the deed," citing *Campbell v. McArthur,* 9 N. C., 33; *Cooper v. White,* 46 N. C., 389; *Spruill v. Davenport,* 44 N. C., 134, and *Reed v. Schenck, supra.* The rule has received consideration, and its precise limits fixed, in the following cases: *Shaffner v. Gaynor,* 117 N. C., 16; *Fincannon v. Sudderth,* 140 N. C., 246; *Mitchell v. Wellborn,* 149 N. C., 347; *Lance v. Rumbough,* 150 N. C., 19; *Land Co. v. Erwin, Ibid.,* 41; and more recently it has been discussed very fully by *Justice Hoke* in *Clarke v. Alridge,* 162 N. C., 326, citing the principal cases which had been decided up to that time, and by *Justice Brown* in *Allison v. Kenion,* 163 N. C., 582; and they all tend to this general result and agree upon this proposition, that the line thus run and marked, before the deed was executed or contemporaneously with the deed, must have been clearly intended by the parties as one of the lines of the land to be conveyed, and without this intention the mere fact that a line was surveyed or even marked will not bring the case within the operation of the rule, unless the said intention can be clearly inferred from the conduct of the parties in regard thereto, the intention being as essential as the fact that the line was surveyed and a corner made. It has grown into one of the maxims of the law that such construction should be made of the language of a deed or other written instrument as is most agreeable to the intention of the parties. The words are not the principal things to be considered, but the intent

and design, which is the chief object to be attained. We cannot alter words or insert others which are not in the instrument, but those that are there should be construed in the way most likely to accord with the intent or meaning of the parties, and we may reject words that are merely insensible. In *Smith v. Parkhurst,* 2 Atl. Rep., 135, *Lord Chief Justice Willes,* referring to these principles of construction, said: "Those maxims, my lords, are founded upon the greatest authority—Coke, Plowden, and Lord Chief Justice Hale; and the law commands the *astutia*—the cunning—of judges in construing words in such a manner as shall best answer the intent. The art of construing words in such a manner as shall destroy the intent may show the ingenuity of, but is very ill becoming, a judge." This idea was never better expressed than in the case of *Walsh v. Hill,* 38 Cal., 281, 287, by *Justice Sanderson:* "In the construction of written instruments we have never derived much aid from the technical rules of the books. The only rule of much value is to place ourselves as near as possible in the seats which were occupied by the parties at the time the written instrument was executed, then taking it by its four corners, read it. This is the main object of all constructions. When the intention of the parties can be ascertained, nothing remains but to effectuate that intention." The same rule has frequently been stated by this Court, and applied in the construction of various kinds of written instruments, grants, deeds, wills, and contracts. *Gudger v. White,* 141 N. C., 507; *Triplett v. Williams,* 149 N. C., 394.

When we look at this case in the light of the foregoing authorities, it is manifest that the findings of the referee and judge withdraw the case from the operation of the rule as to the effect of a line being run and marked at the time the grant was made, as they distinctly find, and as clearly and emphatically as language can express such a finding, that B. L. Sawyer and his surveyor, M. L. Kelly, when they made the survey in 1871 and ran along Deep Gap or Forester Ridge, had no intention of marking the line A-B as a line of the tract of land to be thereafter described in the Grant No. 3290. To use the language of the judge: "In respect of the survey made in 1871, for Grant No. 3290, on the B. L. Sawyer entries, the court finds that said survey began at the chestnut oak at 'A' and was carried to the point 'B' at Thunderhead, the same being the head of Defeat Ridge, *retracing the survey theretofore made in 1867, for the purposes heretofore stated.* . . . The court finds that B. L. Sawyer was present upon this survey, and that the intention of Sawyer and the surveyor, upon said survey, was to establish the chestnut oak at A, a corner in the Bryson survey, as the beginning point in said survey, and that the western line of said survey should coincide with the eastern line of the survey of 1867, and that the northwest corner of said last (first) mentioned surveyed should be identical with the northeast corner of the Bryson survey of 1867." It is then found as a fact that the

line from A to B was not actually measured "along said straight line," but along the corner of Deep Gap or Forester Ridge, a corner being marked at the point where the first and second lines of the triangle made upon the Bryson survey of 1817 intersected on the State line at Thunderhead. There are further findings that B. L. Sawyer knew in 1871, when he and Kelly made their survey, that there was "no Bryson line along and up said Deep Gap or Forester Ridge," and he further knew, at said time, that the line of T. D. Bryson ran from a sugar maple at the head of Big Chestnut Ridge, at the point marked D on the official map to the chestnut oak, at the point marked A thereon, and he consequently knew that this was the eastern line of T. D. Bryson's land, that is, from the sugar maple at D, in a southwestwardly direction, to chestnut oak at A, as the one fact is necessarily to be inferred from the other. It appears also that it was Sawyer who set the compass in 1867 on the Bryson survey and sighted to the sugar maple, which he told the surveying party was at the head of Big Chestnut Ridge. He was the marker, and he marked the chestnut oak so as to indicate the direction from which they had come in reaching it and the direction they would go in leaving, the latter being towards the sugar maple on Big Chestnut Ridge. The marks were three hacks on each side of the tree. Sawyer inquired of T. S. Siler how he could measure the line to the sugar maple without running it, and he was shown how it could be done by a diagram. It is also found that it was the intention that the western line of the Kelly survey of 1871 should coincide with the eastern line of the Bryson survey of 1867, and the the northwest corner of the Kelly survey should be identical with the northeast corner of the Bryson survey. The Bryson northeast corner is at the sugar maple, the point marked D on the map. So it is clear that the line up the Big Gap or Forester Ridge was not run and marked for the purpose of making it a line of the grant to be thereafter issued (No. 3290), but, on the contrary, the intention of the parties was in strict accordance with the express words of the grant, that the line A-D should be one of its lines. We are bound by the findings of fact as made by the referee and judge, as it is not our custom to review them under such circumstances. *Usry v. Suit,* 91 N. C., 406; *Wiley v. Logan,* 95 N. C., 358; *Dunavant v. R. R.,* 122 N. C., 999; *Collins v. Young,* 118 N. C., 265; *Harris v. Smith,* 144 N. C., 439. The findings of fact are conclusive upon us unless it appears that they were not based upon any evidence, or rested upon improper evidence. *Usry v. Suit, supra.* There was evidence to sustain the findings in this case.

But plaintiffs contend that, while the call is for the Bryson line, it also extends from A "1,800 poles north to the Tennessee line at the head of Defeat Ridge, and they insist that the line should go to that place, notwithstanding it is also said that it must begin and run with Bryson's line and corner with Bryson's northeast corner; but we do not

think that this is the proper meaning of the call. The leading purpose and dominant idea is that this line shall coincide with the Bryson line, and if this part of the call is ignored and the line is extended north to the intersection of the head of Defeat Ridge with the Tennessee line, it would violate the evident intention of the parties, as gathered from the deed, that it should corner at D, where the maple stood, and of course stop there, for it could not corner there very well if that was not to be the end of the line. The clear intention of the parties must prevail, and the line must run with that of Bryson's and stop at D, as a corner of the land. It is plain that the parties mistakenly thought, when they inserted the call for Defeat Ridge in the grant, that the northeast corner of ·the Bryson land was on the Tennessee line at the head of that ridge, but their purpose was to stop at the corner, wherever it should be, the call for Defeat Ridge being descriptive and not locative. The call is to be construed as if it read, "cornering at Bryson's northeast corner, supposed to be on the Tennessee line, at the head of Defeat Ridge." This is a much more reasonable interpretation of the grant than if we should defeat the intention to make "Bryson's line" one of the lines, by running the line along Deep Gap or Forester Ridge to Defeat Ridge, eliminating the primary and principal call, and the law does not require that we should do so. Referring to the "third" of the four rules for locating boundaries which are stated in *Cherry v. Slade,* 7 N. C., 82, *Chief Justice Taylor* said: "This rule is founded upon the same reasons with the preceding ones, the design of all being to ascertain the location originally made; and, calling for another well known line of another tract, denotes the intention of the party with equal strength to calling for a natural boundary, so long as that line can be proved." The case of *Bonaparte v. Carter,* 106 N. C., 534, is pertinent, for there the call was for a small oak, John Edwards' corner, on the side of the creek. It turned out that the Edwards corner was 300 yards from the creek, and the Court, by *Justice Clark,* said: "The side of the creek is not called for as a boundary, but merely as a description of the locality of the beginning point, which is 'a small oak, John Edwards' corner.' If that can be identified, an inaccuracy in the description of the locality will be disregarded. *What* is the beginning point is a matter of law for the court to declare. This he did correctly. *Where* it is, is for the jury to say; and the court so held. The objection is, in effect, that the court did not hold that though 'a small oak, John Edwards' corner,' might be identified, it could not be held to be the beginning corner unless it stood on the bank of the creek. This is not the case where two natural objects, a creek and a marked tree, are both called for, and the question arises which shall govern. The case now presented is where a marked tree is described as located on the side of a creek. Inquiry is, Which shall govern, the tree as actually located, or as described to be located? The

failure of the description may make it difficult to satisfy the jury that the tree claimed to be the 'small oak, John Edwards' corner,' is such. But if the evidence is sufficient to identify it, the inaccuracy in describing the locality as 'on the side of the creek,' when it is 300 yards off, cannot be allowed to vitiate the grant. The exact point has never been decided in this State, but in *Murray v. Spencer,* 88 N. C., 357, the Court intimates that when a marked tree in the line of another tract is called for, and the marked tree is identified, but is not in the line of the other tract, that the tree will be held the true corner, and the misdescription of it, as being in such other line, will be disregarded. And the point is expressly so held by *Judge Story* in *Cleveland v. Smith,* 2 Story, 278." And the same rule was followed in *Fincannon v. Sudderth,* 140 N. C., 246. In *Murray v. Spencer,* 88 N. C., 357, where the conflict was between a tree and the line of another tract, both being called for, it was held to be a question for the jury to determine as to which one was actually adopted. In our case the referee and judge have decided in favor of the line, and it is intimated by *Justice Ruffin* that if the line was well known and its location certain, the preference should be awarded to it, as between the two objects in the call. Physical monuments are generally preferred to other objects in the call, because they are more durable, and in some respects more reliable; but even they will give way to a more certain and definite call in the grant or deed, especially if the intention is clearly manifested that they should not govern or control in ascertaining the location of the land. It was held in *Jamison v. Fopiano,* 48 Mo., 194: "Although monuments will generally prevail over other calls in a deed, yet if, taking the whole deed together, they are apparently erroneous, they will be disregarded. And a boundary may be rejected when it is clear that it was inadvertently inserted, and that a tract with different boundaries was intended to be conveyed. In the construction of deeds words are not the principal thing, but the intent and design of the parties; and, therefore, when there are any words in a deed that appear repugnant to the other parts of it, and to the general intention of the parties, they will be rejected. The evident intention here was to convey the whole Lami tract, and the error of the parties in designating a boundary line ought not to defeat that intention," citing *Gibson v. Bogy,* 28 Mo., 478; 4 Greenleaf's Cruise, 307 and 338, and note; *Thatcher v. Howland,* 2 Metc., 41, and *Bosworth v. Sturtevant,* 2 Cush., 391. "While natural objects and artificial boundaries will generally prevail over course and distance, yet the former will often, from the nature of the case, be compelled to yield to the most inferior call. Everything being equal, the call for natural objects would have precedence, because most durable and less liable to change, and are supposed to be selected as landmarks because of their immutability. This is only true when they are selected as locative calls, and are then

not always absolute; when they are noted in the field notes as mere incidental calls in passing, their reliability is weakened and sometimes rendered wholly worthless. Distances called for between corners to creeks or roads, unless specially designated in such manner as to show the intention to make them locative, are not such, and will not ordinarily have precedence over a call for course and distance. The calls in the Hunt deed for the creek and road are incidental, and unless shown to be intended as locative, should not be so regarded if inconsistent with other locative calls." *Jones v. Andrews*, 72 Texas, 5. See, also, *Lutcher v. Hart*, 26 S. W. Rep., 94; *Page v. Scheibel*, 11 Mo., 167, 187.

It was held in *White v. Luning*, 93 U. S., 514 (23 L. Ed., 938):

"1. As a general rule, monuments, natural or artificial, referred to in a deed control its construction, rather than courses and distances; but this rule is not inflexible; it yields whenever, taking all the particulars of the deed together, it would be absurd to apply it.

"2. If monuments are inconsistent with the calls for other monuments, and it is apparent from all the other particulars in the deed that they were inadvertently inserted, they will be rejected.

"3. Other things being equal, boundaries prevail over courses; but where the corners and distances inclose the identical land in dispute, it would be wrong to let two false boundaries stand, in order to defeat a conveyance."

See, also, 1 Jones on R. P., secs. 382, 383, 384; 2 Devlin on Deeds, 1405, 1406; *Noonan v. Lee*, 2 Black (U. S.), 504 (17 L. Ed., 279); *Shipp v. Miller*, 2 Wheat., 316; *Davis v. Rainsford*, 17 Mass., 207; *Thatcher v. Howland*, 2 Metc., 41; *Parks v. Loomis*, 6 Gray, 472; *Hamilton v. Foster*, 45 Me., 40; *Evans v. Greene*, 21 Mo., 481; *Bass v. Mitchell*, 22 Texas, 285; *Bagley v. Morrill*, 46 Vt., 99; *Atkinson v. Cummins*, 9 How. (U. S.), 485; *Browning v. Atkinson*, 37 Texas, 633; *Barclay v. Howell*, 6 Peters (U. S.), 511.

In *Mayo v. Blount*, 23 N. C., 283, it was said to be "a sound rule of construction that a perfect description, which fully ascertains the *corpus*, is not to be defeated by the addition of a further and false description." *Cherry v. Slade*, 7 N. C., at p. 96, Henderson, J.; *Proctor v. Porter*, 15 N. C., 307; *Shaffer v. Ham*, 111 N. C., 1, at p. 11; *Shultz v. Young*, 25 N. C., 287.

We find it stated in plaintiff's brief that "When a deed sufficiently identifies land by its known boundaries or other means, and then superadds, unnecessarily, to the description, such further description, though inaccurate, will not vitiate the previous and perfect description," citing *Simpson v. King*, 36 N. C., 11; *Mortgage Co. v. Long*, 113 N. C., 126. This is because of the maxim, *Falsa demonstratio non nocet*. If the line should be run from A to D and then extended to the head of Defeat Ridge on the Tennessee line, so as to satisfy both calls (*Clark v. Wag-*

*oner,* 76 N. C., 463), it would be of no benefit to the plaintiffs, as we understand. But the mention of Defeat Ridge was evidently incidental, and not intended to be locative. It was merely a mistake of the parties as to where the Bryson corner was. As we have seen, "all authorities unite in saying that no rule can be invoked, no matter how correct in its general application, that tends to defeat the intention of the grantor." *Elliott v. Jefferson, supra.* In this case the mistake in the call for Defeat Ridge is corrected by other more certain descriptions in the grant, which is one of the permissible methods of ascertaining what was meant. *Campbell v. McArthur,* 9 N. C., 33; *Ritter v. Barrett,* 20 N. C. (4 D. and B.), 133; *Cooper v. White,* 46 N. C., 389; *Kessam v. Gaylord,* 44 N. C., 116.

There are several facts which tend to show clearly what property was intended to be described:

1. There is no reference in the grant to the Deep Gap or Forester Ridge, but the call is for a course due north to the Tennessee line, and this course is deflected, not to coincide with Deep Gap or Forester Ridge, but with the Bryson line, beginning with it, running with it, and "cornering" with it at its northeast corner, where the maple is. We must, therefore, adopt the latter as the line, or, at least, as a part of the line. *Mizzell v. Simmons,* 79 N. C., 187; *Cansler v. Fite,* 50 N. C., 424.

2. If the call is run with the Bryson line, and stopped at the Bryson northeast corner, the other calls of the grant fit in with it; whereas if run as plaintiffs contend it should be, there are marked discrepancies.

3. The Bryson line was marked, when the first or Siler survey was made, at both of its ends, and has for its northeast corner a maple, which identifies it with certainty.

4. There are subsequent calls in the Bryson survey for physical monuments just as certain and as reliable as Defeat Ridge, and they would not be reached without greatly lengthening lines, if the line is carried to Defeat Ridge. One of them is "700 poles to a beech, where the Locust Ridge reaches the Tennessee line."

It will be conceded, we presume, that the mere understanding of the parties, without more, as to the location of Bryson's line and northeast corner, cannot control the call. *Hough v. Howe,* 22 N. C., 228; *Johnson v. Farlow,* 33 N. C., 190; *Literary Fund v. Clark,* 31 N. C., 63; *Wynne v. Alexander,* 29 N. C., 237; *Sasser v. Herring,* 14 N. C., 340; *Land Co. v. Erwin,* 150 N. C., 41; *Miller v. Bryan,* 86 N. C., 167; *Ingram v. Colson,* 14 N. C., 520; *Patton v. Alexander,* 52 N. C., 603. The call is not from the chestnut oak (at A) to Defeat Ridge (at B), but a very different one, and if you go to Defeat Ridge at all, it must be by way of the Bryson line, and importance must be attached to the fact that it also calls for Bryson's corner as the end of the line. The Bryson line, at the time, had been well established, having one corner at the

chestnut oak (at A) and the other at the maple (at B), with marks on the trees indicating its course. It could easily be identified, and was certainly identified.

There are many exceptions to evidence in the case, but we think they can be so classified as to present but few questions for our consideration.

*First.* The testimony of the witnesses M. L. Kelly, P. C. Sawyer, and Joseph M. Greer, and any other of the same kind, as to the declarations of B. L. Sawyer concerning the Bryson line, was properly limited by the court to what was actually done on the Kelly survey. The declarations of B. L. Sawyer as to the location of the Bryson line were incompetent, because he was not shown to be disinterested at the time they were made, and, on the contrary, it appears that he was interested at the time of the alleged declarations. *Morgan v. Purnell,* 11 N. C., 97; *Sasser v. Herring,* 14 N. C., 340; *Hedrick v. Gobble,* 63 N. C., 48; *Caldwell v. Neely,* 81 N. C., 114; *Shaffer v. Gaynor,* 117 N. C., 15; *Yow v. Hamilton,* 136 N. C., 357; *Hemphill v. Hemphill,* 138 N. C., 504; *Hill v. Dalton,* 140 N. C., 9; *Lumber Co. v. Branch,* 150 N. C., 240. The declarations of a grantor are not competent in favor of one claiming under him. *Sasser v. Herring, supra.* We need not say whether the evidence is sufficient to show the declarations were *ante litem motam.* It may be said that where the declarant has parted with his interest, what he has afterwards said about lines and boundaries cannot be used against those claiming under him to disparage their title. The same principle applies to the testimony of the witness A. C. Hoffman.

*Second.* The testimony as to the contents of the deposition of Bent Cook was properly excluded, as the witnesses were not able to give the substance thereof (*Wright v. Stone,* 49 N. C., 516; *Whitemire v. Heath,* 155 N. C., 304), and, besides, the deposition itself was not competent, as it had not been opened and passed upon, when it was destroyed, and never has been restored for that purpose. Revisal, sec. 1652. It may be added that the testimony of Bent Cook as to declarations of Bryson was incompetent, as they were made after Bryson had disposed of his interest, and would disparage those claiming under him. 16 Cyc., 979. The testimony of T. T. Jenkins and T. J. Calhoun was properly excluded, and is governed by what we have already said in regard to the other excluded evidence. Besides, it does not clearly appear when the alleged declarations were made.

*Third.* The testimony of William Walker as to line trees was not sufficiently definite as to kind of marks or their age, and in other respects was very indefinite. Even if there was any error, it was not sufficiently harmful for a reversal.

*Fourth.* Testimony as to the acts and declarations of Kope Elias was properly rejected. The relation between George W. Swepson and Elias, as client and attorney, appears to have been severed at the time of the

alleged acts and declarations, by the death of Swepson, and we can see no authority in Elias to bind Swepson by his acts or declarations. It surely did not arise out of their relations as attorney and client.

*Fifth.* The copy of the grant to George S. Walker, No. 138, taken from the registry, was properly admitted in evidence. By Revisal, sec. 988, it is provided that the registry of a deed, or duly certified copy thereof, shall be evidence in any court of the State, without accounting for the nonproduction of the original, and by sections 1588, 1599, it is further provided that the court may, "upon affidavit suggesting some material variance from the original in such registry, or upon other sufficient grounds," by rule or order require the production of the original of such deed, in which case the same shall be produced, or its absence duly accounted for according to the course and practice of the court. In this case, upon affidavit, *Judge Peebles* ordered that defendants allow plaintiffs to inspect the original grant, No. 138, and the plat and certificate of survey thereto attached, or show to the satisfaction of the court that they had made diligent effort to find them and failed, and on failure to produce the original grant, that they procure and use a certified copy of the same from the office of the Secretary of State. The latter was offered in evidence, and the court found that defendants had never had the originals in their possession or under their control, and that they had made a *bona fide* effort to produce the original papers by doing the things and making the inquiries and search detailed in the finding. Thereupon the court overruled the exception to the admission of the copies.

We concur with his Honor that reasonable search had been made for the missing papers, and that the order of *Judge Peebles* had, at least, been substantially complied with. It was fairly exhaustive as to sources of information and probable places of deposit, and to have required more would have rendered it practically impossible to have complied with the order. There is really no tangible or reliable proof that there is any variance between the originals and the copies—none upon which a finding to that effect should legally be made. It is merely suggestion, conjecture, or supposition; but even if there had been some proof to that effect, the defendants satisfied the court that they had made a diligent effort to comply with the order, as they were required by its terms to do. *Justice Ruffin* said, in *Love v. Harbin,* 87 N. C., at p. 254: "A main purpose intended to be accomplished by registration is the perpetuation of the instrument, and of the memorial of its probate and order of registration, and it will not do to hold that this intention of the statute may in every case be defeated by a notice to produce the original. Under the operation of such a rule it would be next to impossible to establish any title depending upon very ancient deeds, as they are rarely preserved so

as to pass with the land; and this partly because it is universally under-
stood that when once registered the proofs of their execution and probate
are perpetuated."

*Sixth.* As to the testimony of Mr. Davidson in regard to proceedings
in *Wyman v. Taylor,* we do not see how it could be competent, if relevant
to the issue in this case, to show that the court refused certain instruc-
tions in that case. It was *res inter alios acta.* The court submitted the
evidence for the purpose of showing the *litem motam,* as the record
states.

*Seventh.* The description in a junior grant may not be evidence of the
location of lines or boundaries of a senior grant (*Sasser v. Herring,
supra; Hill v. Dalton,* 136 N. C., 339); but it was the survey of Siler
that fixed the Bryson line, and this was made prior to the date of the
senior grant, No. 3290. This is quite a different question from the one
decided in the cases cited. The court properly admitted the map and
certificate of survey to corroborate Siler.

*Eighth.* If there is any defect in the defendant's chain of title, it does
not concern the plaintiffs in this appeal, as they must recover upon the
strength of their own title, and not upon the weakness of their adver-
sary's. They cannot recover by showing merely that defendants had no
title, even if this be true.

*Ninth.* The referee was not bound to find a fact simply because there
may have been some evidence of it, as he had the right to weigh the same,
and therefore he could consider the evidence of reputation as to the Bry-
son line in connection with the other evidence in the case, and was not
compelled to find in accordance with the reputation. He considers the
whole evidence, and not merely a part of it; and this applies to other
exceptions based upon his failure to find certain facts.

*Tenth.* The testimony of Joseph M. Greer, as to certain facts told him
about the Bryson northeast corner at Defeat Ridge, was properly ex-
cluded, as he said "it seemed to be agreed by all of said persons"; but
just who it was that called his attention to it he would not say positively,
because he did not recollect every person present. This was entirely too
indefinite. He did not, and could not, say who it was, nor did he state
what was said, so that the court could judge of the quality of the testi-
mony, but he was only able to state that "it seemed to be agreed by
them." The witness must be able to give the substance of what was said
and by whom, and the impression made on him will not answer the pur-
pose. This was held in *Grant v. Mitchell,* 156 N. C., 15, where, at p. 18,
it is said: "The secondary witness may give the substance, but not the
mere *effect,* of the former testimony. To allow him to state the latter
only would be to permit him to decide upon the effect of the testimony,
instead of submitting it to the jury, to whom it properly belongs,"

quoting from *Jones v. Ward,* 48 N. C., 26, and citing *King v. Joliffe,* 4 Term R., 290.

There are a few more exceptions, but they are fully covered, we think, by what we have said in regard to the others, and require no further discussion. It may be said generally, and in conclusion, that no reference is made in Grant No. 3290 to Deep Gap or Forester Ridge as a line of the grant, and this is made more significant by the fact it is referred to only for the purpose of describing the beginning corner at the chestnut oak (A on map), and the next call is "north with Col. T. D. Bryson's line," and so forth, and not "north with the Deep Gap or Forester Ridge, Col. Bryson's line," as we would expect if the ridge controlled the call. The referee and judge find that it was not the intention to make the ridge one of the lines, or Defeat Ridge one of the corners, but the sole intention was to start at the chestnut oak and go to the sugar tree or maple at the head of Big Chestnut Ridge. It is found as a fact that in the survey of 1871, for Grant No. 3290, the line was measured along Deep Gap or Forester Ridge and carried to Thunderhead, it being the head of Defeat Ridge, in order to *retrace the survey of 1867, for the purpose heretofore stated,* which was triangulation, the object being to locate the line from A to D, or from the first corner to the sugar maple, and to establish, at the latter place, the Bryson northeast corner. If a line had been run along Deep Gap, it could not be adopted as a line of the survey unless it was so intended to be, and it is found by both referee and judge that there was no such intention. The line from A to D was marked for some distance at either end, and cuts or hacks made on the chestnut tree at the place of beginning, and, at the time, indicating its direction. Besides, to fix the line at A-D will harmonize with the other calls of the Bryson tract of land. All these things being considered— and others could be added—make it safer and more certain, as a guide to the intention of the parties, that the call should be controlled by the Bryson line as thus located, from A to D, than by the line A-B, which is not even north, and has no such indicia of a line as we find on the other. Again we say, physical monuments will have the preference in the calls, unless there is some more definite and certain call that clearly indicates the intention of the parties. There is no hard and fast rule of the law that is permitted to have the effect of defeating the clearly expressed will of the parties.

It must be borne in mind that we are dealing with a referee's report, in which the facts were found and the findings afterwards confirmed by the judge, and this renders many of the cases cited by the plaintiff inapplicable. It is found, for instance, that the line from A to B was not run and marked, nor was it intended to be the first line of the Kelly survey, but the line A-D was intended to be the first line, and, further, that the line A-B, by Forester's Deep Gap Ridge, was run, though not

marked, for the purpose solely of locating the line A-D as the first line of the tract, the Kelly survey having been made just as was the Siler survey and for the same purpose. The rule, therefore, which classifies locative calls into natural objects, mountains, rivers, lakes, and creeks, artificial objects, as marked trees, lines, and course and distance, giving them rank in the order named, does not require, in this case, that the first line should run from A to B, without any regard to the call for Bryson's line, as the line A-D was actually run and marked for the first line; and, besides, there are other calls in the survey of equal importance with the one for Defeat Ridge, which would have to be disregarded if that is adopted as the end of the first line. If the line is run from A to D, we are following the footsteps of the surveyor, and rejecting a false description for that which is not only certain, but which the referee and judge say was the one actually adopted by the parties at the time of making the surveys. This is not a case where there is a call by course merely to a certain object, for here the course is controlled by an additional call for a well established line of another tract, which was actually run and marked when the Bryson line was surveyed, and the question is whether the course should be along said line. The well settled rule, and the true construction of the grant, require this departure from the course. *Lumber Co. v. Hutton,* 159 N. C., 445; *Whitaker v. Cover,* 140 N. C., 280; *Bowen v. Lumber Co.,* 153 N. C., 366. Abstract rules of law should not be so applied as to disappoint the clear intention of the parties, *Triplett v. Witherspoon,* 149 N. C., 394; *Gudger v. White,* 141 N. C., 507, and the rules of law in respect to boundary were adopted to prevent such a result. It may be added that Forester or Deep Gap Ridge, along which the Kelly survey is claimed to have been made, appears to be quite as prominent and as well known as Defeat Ridge, and yet there is no mention of it in the surveys, or the grants, as a line. It is argued by plaintiffs that it would be far more certain, if called for, than the line of another tract; and if this is so, why did not the surveyor call for it?

The record and the briefs are voluminous, the record containing 805 and the briefs 342 printed pages, and there were a large number of exceptions, running into the hundreds. Some of the questions are highly important and very delicate in certain of their phases. The case has been strenuously contested, with great ability and research, and the Court has bestowed upon it most careful study and reflection. We have concluded that we but decide it upon its true legal merits when we hold that no error was committed at the hearing in this the plaintiff's appeal.

No error.

DEFENDANT'S APPEAL.

PER CURIAM. In the defendant's appeal it is found, and so adjudged by the Court, that there is no error in the proceedings or judgment.

No error.

PLAINTIFF'S APPEAL.

BROWN, J., dissenting: I feel compelled to differ from the conclusions reached by the majority of the Court in this case, and I will state my reasons as briefly as possible.

This is an action brought to recover a triangular tract of land delineated on the map as beginning at A, running to B, thence to D, and back to A. The plaintiff's appeal involves the proper location of the first line of Grant No. 3290. The beginning corner of this grant is admitted by all parties to this action to be correctly located, and is shown on the court map at the letter A. The description of Grant 3290 may be analyzed as follows:

1. A tract of land containing 10,000 acres.

2. Lying in Macon County, Section No. ———, District No. ———.

3. Being part of the lands lately acquired, etc.

4. Bounded as follows, viz.:

5. On the waters of Hazelnut Creek.

6. Beginning at a chestnut oak on a trail leading from the mouth of Sugar Fork Creek to the Deep Gap.

7. Beginning and running with Col. T. D. Bryson's line.

8. Eighteen hundred poles north *to the Tennessee line at the head of Defeat Ridge.*

9. Cornering with Bryson's northeast corner.

10. Thence east 700 poles to a beech, where the Locust Ridge reaches the Tennessee line, etc.

It is admitted that the chestnut oak at A is the beginning corner of this grant. I am of opinion (1) that the first line of Grant 3290 begins at A and runs to B on the map as *a conclusion of law* wholly irrespective of whether there ever has been or is now a "Bryson's line," and regardless of where it was located or alleged to have been located. In other words, the existence and location of this line is entirely immaterial for the purpose of establishing the first line of Grant 3290. The admitted facts show that this grant was located by starting at A and running to B, this being the identical line actually run and marked at the time the entries were made.

(2) Assuming that the Bryson line is material, it appears to be undisputed that at the time of the survey in 1871 and the issuance of Grant 3290 thereon in 1872, the line from A to B was reputed to be the Bryson line, even though that repute was incorrect, and the surveyor located the first line of Grant 3290 under the belief that he was running with the true Bryson line, and he acted upon that belief, although it may have been erroneous.

The referee finds "that Defeat Ridge is located as plaintiff claims, being the ridge going up between the prongs of Little River, in Tennes-

see, and the head of Defeat Ridge culminates at and with other con-
verging ridges and forms the easternmost knob of the group of knobs
known as Thunderhead, on the State line between North Carolina and
Tennessee, the said *head of Defeat Ridge being at the point marked B
on the official map."*

The Court finds that in making the survey in 1871 of the B. L.
Sawyer entries, upon which Grant No. 3290 issued, in 1872 M. L. Kelly,
the county surveyor, with his crew, surveyed from the said point "A"
up the Deep Gap or Forester Ridge to the top of the Smoky Mountain
at "B" at the head of Defeat Ridge, and at the said point "B" made
and marked a corner on a tree of the survey he was then making and
upon which Grant No. 3290 issued. The said tree was marked as a
corner by M. L. Kelly in 1871, having been previously marked as a
corner of the Bryson survey in 1867.

The call for 1800 poles north to the Tennessee State line at the head
of Defeat Ridge is, in my opinion, controlling. There are two well de-
fined objects that are unmistakable; one is the State line that divides
North Carolina and Tennessee, and the other is Defeat Ridge. This
ridge, as shown by the evidence, and not controverted, is one of the
most prominent natural objects in the whole of that great range of the
Smoky Mountains, and because of its prominence has been long and
well known to the citizens and inhabitants of both States of Tennessee
and North Carolina, as well as to the United States surveys and to
geographers. It would be difficult to find a better defined and located
natural object, or one better known in all that country. The location
of this right where it joins the Smoky Mountains and its relation to the
State line was overwhelmingly established by the evidence, and the
court found the fact to be that it was located at "B.'

It was also admitted that the dividing line between the States of Ten-
nessee and North Carolina passed along the crest of the Smoky Moun-
tains. So that we have here a remarkable conjunction, in fact, of both
the descriptions mentioned in the surveyor's certificate of his survey,
and the grant issued thereon, viz., "the Tennessee line and Defeat
Ridge."

These facts being practically admitted or indisputably ascertained,
under the repeated and well settled decisions of this Court, it follows,
as the legal result, that the first line of Grant 3290 begins at "A" and
runs to "B." As I read the cases, this rule of law may be regarded as
an ancient one in this State, and so well settled that it can hardly be
seriously questioned.

Among the many cases cited in the elaborate and learned brief of the
plaintiff's counsel, we find the following to be especially in point, where
the rule is most instructively applied to facts very similar to those in

the case under consideration: *Miller v. Cherry,* 56 N. C., 29; *Jones v. Robinson,* 78 N. C., 398; *Flannigan v. Lee,* 19 N. C., 430; *Carson v. Burnett,* 18 N. C., 558; *Jones v. Bunker,* 83 N. C., 327; *Reid v. Schenck,* 14 N. C., 65; *Graybeal v. Powers,* 76 N. C., 71; *Waters v. Simmons,* 52 N. C., 543.

When a deed sufficiently identifies a thing by its known name, or other means, and then superadds, unnecessarily, to the description, such further description, though inaccurate, will not vitiate the previous and perfect description. *Simpson v. King,* 36 N. C., 11; *Mortgage Co. v. Long,* 113 N. C., 126; *Proctor v. Pool,* 15 N. C., 373.

The head of Defeat Ridge is a natural object so commanding in its character that it answers the description fully, and is sufficient of itself to locate the second corner, regardless of whether the line runs with Bryson's line or not. The unnecessary and false description will be disregarded and the line run to this controlling natural monument.

In *Ehringhaus v. Cartright,* 30 N. C., 42, it is said: "Many of the rules respecting boundaries are examples of preferring one part of a description, turning out to be true, to another part, turning out to be untrue. The case of *Proctor v. Pool,* 4 Dev., 370, is an instance of the application of the rule to a general description of the thing devised, the Court holding that the effect of the true description was not to be weakened by a further and unnecessary false description." *Smith v. Low,* 24 N. C., 460.

In *Miller v. Cherry,* 56 N. C., 29, it is said: "Our decision is made under the rule that *where more than one description is given, and there is a discrepancy, that description will be adhered to as to which there is the least likelihood that a mistake would be committed,* and that be rejected in regard to which mistakes are more apt to be made. This is a rule of frequent application. If a tract of land be described by natural objects, or corner trees, and also by course and distance, and there turns out to be a discrepancy, the latter description is rejected."

In *Addington v. Jones,* 52 N. C., 584, the Court said: "This rule, in respect to questions of boundary, presupposes that the description *which is to control, and be put in the place of course and distance, has of itself* sufficient certainty to locate the land, supposing the course and distance which it controls and contradicts to be stricken out of the grant."

In *Stafford v. King,* 94 Am. Dec., 308, it is laid down that the general rules in respect to locating land are: (1) By natural objects, such as rivers, mountains, lakes, creeks; (2) artificial marks, such as marked trees and lines; (3) course and distance.

In this case *Chief Justice Marshall* is quoted as having said that "The most material and most certain call shall control those which are less material and less certain." In this case it is laid down as a prime rule

that the "Footsteps of the surveyor must be followed, and the above rules are found to afford the best and most unerring guides to enable one to do so."

In *Doe v. Payne,* 11 N. C., 71, it is said that "When the natural boundary is *unique* it has properties peculiar to itself." A more distinctive, commanding, and controlling object could scarcely be thought of than the well known head of a great mountain ridge.

In *Carson v. Burnett,* 18 N. C., 558, it is said: "The object in all boundary questions is to find some certain evidence of what particular land was surveyed, or was intended to be conveyed. . . . When the call is for the line of another tract, it has also been held that course and distance may yield to it. But it is, obviously, *not so decisive as the call for a natural boundary."*

In *Waters v. Simmons,* 52 N. C., 543, the Court stated: "One of the calls of the grant . . . is, 'The head of Spellar's Creek,' which is certainly a natural object," etc. "It was the duty of the court, then, to instruct the jury that, as a construction of law, the head of 'Spellar's Creek' was one of the corners of the defendant's tract of land," etc. This is precisely in point in the case at bar. The call is to the State line at the head of Defeat Ridge. Defeat Ridge is a "natural object." Its head is at the Tennessee line and it was the duty of the judge to declare that it was one of the corners of the grant (No. 3290) to W. L. Love.

The defendants insist that the way to go to "B" from the admitted beginning at "A" is to run from "A" to "D," the head of Big Chestnut Ridge, and the defendants' alleged northeast corner; thence westerly along the top of the mountain to "B," a distance of 3 or 4 miles, and then run back in an easterly direction over precisely the same line and same distance to "D" and then resume the survey of the lines of Grant 3290 along the mountain until they turn southwardly to the beginning.

The referee so concluded, and his judgment was affirmed by the court below. In view of the well settled principles of law set forth in the cases that we have cited, I see neither reason in nor authority for such ruling.

The defendant, admitting that the Bryson line was actually run as claimed by the plaintiff, undertakes to explain it by saying that the straight line from "A" to "D," intended as a Bryson line, was not actually run and marked from "A" to "D" because the line would run through a country badly infested with rattlesnakes, and, therefore, they ran from "A" to "B" and by triangulation platted the true Bryson line from "A" to "D."

This explanation may or may not be true, but it cannot have the effect of changing the controlling call for Defeat Ridge. It is but added proof that the Bryson line was actually run where the plaintiff claims it was, and that is consistent with the call from the chestnut oak to Defeat Ridge.

There are several exceptions to the evidence, which are set out in the assignments of error and commented on in the plaintiff's brief, some of which, in my opinion, are well taken and entitle the plaintiff to a new trial, but in the view I take of the case it is not necessary to prolong this opinion by commenting upon them.

I am of opinion that upon the admitted facts the plaintiff is entitled to judgment for the tract of land bounded and described in Grant 3290, beginning at chestnut oak "A" and running to "B" at Defeat Ridge.

The CHIEF JUSTICE concurs in this opinion.