KNITTING MILLS v. GUARANTY CO.

(Filed March 21, 1905).

*Indemnity Bond—Final Agreement—Preliminary Negotiations.*

1. Where the defendant gave a bond to secure the plaintiff against any loss "by any act of fraud or dishonesty" of plaintiff's employee, the defendant by such bond did not guarantee the payment of the employee's debts contracted with the plaintiff.

2. The legal effect of a final written instrument which defines and declares the intentions and rights of the parties cannot be modified or corrected by any preliminary negotiations or agreement, nor is it permissible to show how the parties understood the transaction in order to explain or qualify what is in the final writing, in the absence of an allegation of fraud or mistake, unless the terms of the instrument are ambiguous and require explanation.

ACTION by Orion Knitting Mills against United States Fidelity and Guaranty Company, heard by *Judge G. S. Ferguson* at the June Term, 1904, of the Superior Court of LENOIR County. From a judgment for the plaintiff, both parties appealed.

DEFENDANT'S APPEAL.

The plaintiff sues to recover the sum of $353.18 for goods sold and delivered to one Leopold Goorman, the payment of which it alleges was guaranteed by the defendant. The facts are that the defendant on the 9th day of March, 1898, by what is called in the case a temporary bond, "guaranteed the fidelity of Goorman in the sum of one thousand dollars in favor of the plaintiff from the second day of March, 1898, for one year," subject to all the covenants and conditions set forth and expressed in the bond of the company to be issued and forwarded from the home office within

fifteen days from said date. Goorman made a written application for the permanent bond, in which he represented that he was engaged as agent in the service of the plaintiff and had been since February 1, 1898, and agreed to indemnify the defendant against any loss it might sustain by reason of its guaranty of his fidelity "in his present or any other position in the service" of the plaintiff. The plaintiff in writing answered certain written questions sent to it by the defendant, and among others, the following: "How long have you known the applicant and how long has he been in your employ?" Ans. "Only recently, and we know very little of him." "What salary will he receive?" Ans. "None; he is to buy goods from us and for stipulated prices." "If his duties embrace the custody of cash, state the largest amount likely to be in his custody at any one time." Ans. "His obligations to us will probably average $500 to $600, not exceeding $1,000 at any time." In that writing it was recited that application for "bond of security" had been made for Goorman, who was in the plaintiff's service at Denver, Colorado, and at the end was the signature of the plaintiff, under the words "signature of employer." The paper containing the questions and answers was dated March 15, 1898. The permanent bond is dated March 7, and was forwarded to the plaintiff March 17, 1898. It recites the fact that Goorman had been appointed agent in the service of the plaintiff, and describes the relation between them as that of employer and employee, and also recites that the plaintiff had made "a statement in writing relative to the duties and responsibilities of Goorman, and the checks to be used upon him as employee in said position." The defendant then agrees "in consideration of the premium and the foregoing statements of the said employer that, subject to the conditions precedent expressed in the bond, it will make good and reimburse to the plaintiff all and any pecuniary

loss it may sustain in the form of money, securities or other personal property in the possession of the employee (Goorman) or for the possession of which he is responsible, by any act of fraud or dishonesty on his part in connection with the duties of the office or position" in said bond mentioned. The written statement of the plaintiff, dated March 15, 1898, was enclosed to the defendant in a letter of the same date, in which the plaintiff stated that Goorman was not employed by them at all, but buying outright such goods as they shipped to him. It is further stated in the letter that the plaintiff never had any business dealings with him before and did not know him; that he is engaged in an agency and commission business in Denver and had applied to the plaintiff for a credit of $500 or $600, and offered to give a good bond to secure the same. The plaintiff, in this letter, then adds: "He is associated in business now with Mr. Lewis Pelton, Denver, Col., who has been representing us in that market for quite a little while."

The foregoing are the material facts taken from the report of the referee, to whom the case had been referred, and the exhibits. The referee reported the facts and his conclusions of law and found that the plaintiff is entitled to recover of the defendant the amount of the debt due by Goorman. The defendant excepted to the finding; the Judge overruled the exception and affirmed the report, giving judgment for the amount of the debt and the costs against defendant, who again excepted and appealed.

*N. J. Rouse,* for the plaintiff.
*Loftin & Varser,* for the defendant.

WALKER, J., after stating the case. The referee found as a fact that when the permanent bond was delivered to the defendant it knew that Goorman was not an employee of

the plaintiff, and he decided as matter of law that the plaintiff's written statement of March 15 and the letter of the same date, in which it was enclosed to the defendant, should be considered in connection with the bond, as constituting the contract between the parties, and, when thus considered, those papers together imposed a liability upon the defendant to pay the "honest debt of Goorman," the act of Goorman in refusing to pay the debt to the plaintiff being an act of fraud or dishonesty within the meaning of the words of the bond. The Court below seems to have concurred in this view of the referee. The conclusion is based upon the theory that, as the defendant knew how the plaintiff regarded the transaction, it would be fraudulent to permit the plaintiff to sell goods to Goorman with such an understanding of the contract, and the defendant is consequently estopped to deny its liability. Assuming, notwithstanding what is said in the concluding paragraph of the letter of March 15th, that there is some evidence to charge the defendant with knowledge of the plaintiff's construction of the contract, the fact remains that, afterwards, the plaintiff received the permanent bond, which secured it only against loss by reason of the dishonesty of Goorman as its agent, and having had this bond in its possession several days, it shipped the goods to him. It dealt with the defendant at arm's-length and is presumed to have been able to take care of itself in the transaction. When it received the bond its plain duty was to read it, and we must assume that it did. The language of the bond is too clear and explicit to mislead any one. It excludes the idea that the defendant was undertaking to guarantee the payment or collection of Goorman's debt, and we know of no principle of law which requires us to say that it does so, even when read in connection with the letter and statement. Why did not the defendant have as much right to rely upon its version

of the contract, that it was merely guaranteeing the honesty
of an agent, as did the plaintiff to act upon its view of
the transaction, that defendant was guaranteeing the pay-
ment of the debt? The letter and statement of the plaintiff
to the defendant, if we say the least of them, were not any
more unequivocal in stating the plaintiff's understanding
than the bond was in setting forth that of the defendant.
Again we inquire, how was it any more censurable in the
defendant to send the bond to the plaintiff after receiving
the letter and statement and to permit the latter to sell goods
to Goorman, than it was in the plaintiff to receive and retain
the bond without making the slightest objection to it and
then to sell the goods, when it well knew what were the con-
tents of the bond? In this contention between the parties,
we are led to believe that the advantage is decidedly with
the defendant. He is relying upon the last written memo-
rial of the contract, which in law is taken to express all that
the parties intended to put in it, and which merges in itself
all prior or cotemporaneous declarations or agreements. The
legal effect of a final instrument which defines and declares
the intentions and rights of the parties cannot be modified
or corrected by proof of any preliminary negotiations or
agreement, nor is it permissible to show how the parties un-
derstood the transaction in order to explain or qualify what
is in the final writing, in the absence of an allegation of
fraud or mistake or unless the terms of the instrument itself
are ambiguous and require explanation. *Meekins v. New-
berry,* 101 N. C., 17; *Bank v. McElwee,* 104 N. C., 305;
*Taylor v. Hunt,* 118 N. C., 168; *Moffitt v. Maness;* 102
N. C., 457. The case of *Dellinger v. Gillespie,* 118 N. C.,
737, is much like our case in principle. It is there said that
when the defendant received the contract he should have re-
pudiated it at once, if it did not conform to the real agree-
ment of the parties, and have acted upon it with full knowl-

edge of its contents. That, if he did not read it, it was his own fault and the law will not relieve him from the consequences of his neglect, and the case therefore must be considered and decided as though he had read it and knew and understood what was in it. The construction of a contract is to be determined, not by what either one of the parties may have understood, but by what they both agreed. *Brunhild v. Freeman*, 77 N. C., 128; *Pendleton v. Jones*, 82 N. C., 249; *Lumber Co. v. Lumber Co.*, at this term.

Here we have a solemn instrument embodying the final intention and agreement of the parties, without any allegation of mistake, and we are to construe the same according to the legal import of its terms, and upon such legal import there is no room for doubt as to what is the meaning of the writing. We must therefore decide according to the general rule of law that all preliminary negotiations and agreements are to be deemed merged in the final settled instrument of the parties when there is no reasonable showing of mistake. *VanNess v. Mayor*, 4 Peters, 232; *Steamboat Co. v. Steamboat Co.*, 109 U. S., 672. It is not admissible to add to or engraft upon the contract, as thus ascertained by the law, any new stipulation, nor to contradict those which we find are plainly set forth in it, and the meaning of which is wholly free from any doubt. *Oelrichs v. Ford*, 23 How., 49; *Davis v. Glenn*, 76 N. C., 427. If the construction of the letter and statement, as insisted upon by the plaintiff's counsel, is the correct one, it is directly repugnant to the terms of the contract as finally written, and cannot, under the well settled rule, be permitted to overthrow it, for that would be the inevitable result. The plaintiff must be held to have accepted the agreement as finally expressed in the bond and must abide by it. This ruling renders it unnecessary to consider the other exceptions.

The Court erred in giving judgment for the plaintiff upon

the report of· the referee for the amount of the account against Goorman. The judgment should have been the other way, and will be so entered.

Reversed.

### PLAINTIFF'S APPEAL.

WALKER, J. This action was brought to recover the amount of accounts for goods sold and delivered to Leopold Goorman and to Lewis Pelton. The referee found in favor of the plaintiff as to the account of Goorman and against him as to the account of Pelton. We have disposed of the case, so far as it relates to the Goorman account, in the decision rendered in the defendant's appeal. We are now to consider the plaintiff's exception to the ruling in regard to the Pelton account. There is no substantial difference between the two cases. Whatever difference there may be is unfavorable to the plaintiff. The main question having been decided in the other appeal, it only remains to say with reference to the Pelton account, that the referee found the defendant had no notice as to how the plaintiff construed the bond and that the transaction between the plaintiff and Pelton was not within the scope of the contract of the defendant with the plaintiff. In all other respects the two appeals are substantially alike, and if the ruling in favor of the plaintiff in the other appeal was wrong, the ruling against him in this appeal must be right.

No Error.