LULA R. MILLER ET AL. v. ROBERT P. JOHNSTON ET AL.

(Filed 28 February, 1917.)

**1. Deeds and Conveyances—Boundaries—Courts—Trials—Matters of Law—Questions for Jury.**

What are the termini or boundaries in a deed or grant is a matter of law, and upon conflicting evidence, it is for the jury to determine where these termini or boundaries are; but where the court declares what the boundaries are, and this is not disputed, the whole resolves itself into a question of law.

**2. Same—Admitted Lines—Further Specifications.**

In a controversy over lands, a fixed and established line is dealt with as a natural object and will control course and distance; and descriptive specifications cannot prevail against a known and controlling call, nor will the addition of further description defeat a full and perfect decription which fully identifies and ascertains the property conveyed or devised.

**3. Same—Wills—Devises—Codicils—Variant Descriptions—Residuary Clause.**

A testator devised certain part of his lots to his wife with description calling for certain known and established lines, and by codicil he referred to the death of his wife, and devised the lands to his daughter, under whom the plaintiff claims, but terminating with a known and admitted line within that specified in the description of the lands devised to the wife. The will contained a residuary clause. The court, after pointing out the difference in the description in the devise in the will and that in the codicil, held that by knowingly using a different designation of the known boundaries, the intent of the devisor was that the codicil pass to the daughter a smaller acreage than devised to the wife, or he would have given the same description; and the boundaries or objects in both descriptions being admitted, the defendants were entitled to recover as a matter of law; and a particular description as to the location of an orchard, as affecting the line claimed by the plaintiff, must give way to the boundary admitted to be that designated.

**4. Same—"Including."**

Where a testator owned more than five lots along a street, and devised some of them by description beginning at a fixed point and running south along the street to the northern boundary of the fifth lot, his intent is construed to include only the five lots from the beginning point and the northern boundary of the fifth lot, and under the facts in this

MILLER *v.* JOHNSTON.

case it is held that those claiming under the devise could not go beyond the northern line of the fifth lot.

**5. Appeal and Error—Harmless Error—Evidence—Instructions.**

Where evidence as to the recital in certain deeds with relation to a controversy concerning lands is erroneously admitted, an instruction to the jury that they must not consider the recital renders the error harmless.

**6. Evidence—Issues—Trials—Wills.**

In an action concerning the boundary to lands devised, testimony which has no bearing upon the issue, but is at most an expression of doubt as to the construction of the will, is properly disallowed.

CIVIL ACTION, tried before *Adams, J.,* at August Term, 1916, of BUNCOMBE.

This is an action to recover a lot of land in the city of Asheville, the controversy being as to the ownership of the land on the plat, which is copied below, between the lines B, M, N, I, or as reduced by the widening of Main Street and the opening of Walnut Street between the lines 1, 2, 3, 4.

The plaintiffs are children and grandchildren of Elizabeth A. Gudger, who died in 1912, and they claim under the will of James M. Smith, who acquired lots 38, 37, and 36 in 1816, and all of the other land covered by the plat, except lot No. 51, in 1840. James M. Smith made

his will in 1850, and in addition to giving certain property to different children, he devised certain lands to his wife, Pollie, for life and certain other lands to her absolutely.

In 1854 he added a codicil to his will in which he recites that his wife had died, and he disposes of the property devised to her, describing it as "the property in said will, real and personal, given to her for life and that property given to her absolutely."

In 1856 he made changes in his will and added another codicil in which is the devise under which the plaintiffs claim, and as the plaintiffs contend that the devise to Elizabeth A. Gudger covers the same land as that devised to the wife, Pollie, as far as the land covered by the plat is concerned, the two devises are given in parallel columns in order that the similarity and differences in description may be seen the better:

| *February 9, 1850.* | *February 8, 1856.* |
|---|---|
| 1. I give and devise to my beloved wife Polly | 1. I give and devise to her the said Elizabeth A. Gudger |
| 2. the house and lots in which I now live in the Town of Asheville | 2. the house and lots in which I live |
| 3. including the tavern and adjoining buildings, Garden, orchard, and ADJOINING LOTS | 3. including the tavern and outbuildings contiguous on the east side of the main street |
| 4. Beginning at Mr. Summey's line on the main street near my house | 4. Beginning on the street and J. B. Whiteside's corner south of the tavern house, |
| 5. then with the main street a north course | 5. and running with the main street, INCLUDING THE FIVE FRONT HALF-ACRE LOTS |
| 6. (a) CROSSING THE HOLLOW (b) TO THE LINE OF the southern half acre lot hereinafter devised to my daughters ANN CATHERINE CROOK and RUTH W. RIPLEY. | 6. PASSING BELOW THE FENCE NORTH OF THE WELL |
| 7. (a) THEN WITH THAT LINE and (b) *the line of the lot east of it an east course* | 7. (a) and running with the LOWER OR NORTH LINE OF THE LOWER OR FIFTH LOT EASTWARD BY THE EAST CORNER THEREOF (b) *and the same course* |
| 8. to the new street running by EPHRIAM CLAYTONS, | 8. to the street NEAR EPHRAIM CLAYTONS |
| 9. and with that street a south course to the cross street | 9. & south with that street to the corner near Z. B. Vance's office, |
| 10. and with that and Mr. Summey's line to the beginning. | 10. then with the cross street and south line of my lot to the beginning including the orchard |
| 11. . . . for and during her natural life and no longer | 11. . . . for and during her natural life with remainder to such children as she may leave her surviving and those representing the interests of any that may die leaving children. |

MILLER v. JOHNSTON.

There was also a residuary clause in the will of the said Smith which is as follows:

"All the rest and residue of my estate, real, personal, and mixed, I direct to be sold by my executors at public or private sale as they may deem best. . . .

"The property, real and personal, herein left to my wife for life is intended to be embraced in the direction on this page to sell the residue of my estate and divide the proceeds amongst my daughters. . . ."

It was admitted that the devise to the wife of the testator, copied above, began at the letter A on the plat and ran to G, then to H, then to J, and back to A.

It was also admitted that the devise to Elizabeth A. Gudger and her children begins at A and runs north with Main Street, the plaintiffs contending that the northern line of the devise was the line G, H, and the defendants claiming that the northern line was the line B, I.

The tavern, in which James M. Smith lived was located on lots 38 and 37 and in part on lot 36.

It was admitted that the line B, I was the northern line of the fifth half-acre lot counting from A, and that the line G, H was the northern line of the eighth half-acre lot counting from A, and of the fifth counting from the northern line of lot 36, the third lot on which the tavern was situate.

There was no dispute between the parties as to the location of any object referred to in the devise to the wife of the testator, or in the devise to Elizabeth A. Gudger and children, except the fence and the orchard.

The plaintiffs offered evidence tending to prove that the fence was on the line S, T, and the defendants that it was on the line P, Q.

The plaintiffs also offered evidence tending to prove that the orchard extended north of the line B, I, and the defendants that it was between the lines A, J and B, I.

The jury returned a verdict in favor of defendants, and from the judgment rendered thereon the plaintiffs appealed.

*Jones & Williams for plaintiffs.*
*Merrimon, Adams & Johnston, Martin, Rollins & Wright, W. R. Whitson, and Mark W. Brown for defendants.*

ALLEN, J., after stating the case: The plaintiffs claim under the will of James M. Smith, and they cannot recover unless the land in controversy is a part of the land devised to Elizabeth A. Gudger and her children.

The plaintiffs contend that the court ought to have held as matter of law that the devise included the three half-acre lots, Nos. 38, 37, and 36, as the lots on which James M. Smith lived, and in addition the five

half-acre lots, Nos. 35, 34, 43, 44, 45, and that, if this is not so, that the location of the land is a question for the jury, and that error was committed on the trial of the issues.

The defendants contend, on the contrary, that there was no question for the jury; that the northern boundary of the plaintiffs is the line B, I, and that while this ought to have been held by the court, it has been correctly decided by the jury under proper instructions.

It has been settled since the case of *Doe on dem. Tatem v. Paine,* 11 N. C., 64, that *what* are the termini or boundaries of a grant or deed is matter of law, to be determined by the court, and *where* these termini are is a fact to be left to the jury, when the location is in dispute (*Jones v. Bunker,* 83 N. C., 324; *Redmond v. Stepp,* 100 N. C., 212; *Lumber Co. v. Bernhardt,* 162 N. C., 464); but if the court declares what the boundary is, and the location of this boundary is admitted, the whole resolves itself into a question of law.

It is also a rule of construction that a line called for in a description, which is fixed and established, is dealt with as a natural object, and controls course and distance (*Fincannon v. Sudderth,* 140 N. C., 246; *L. Co. v. Hutton,* 159 N. C., 445; *L. Co. v. Bernhardt,* 162 N. C., 464) and that descriptive specifications, while useful when the location is in doubt, cannot prevail against a known and controlling call (8 R. C. L., 1086; *L. Co. v. L. Co.,* 169 N. C., 94), nor will the addition of a further description be permitted to defeat a full and perfect description which fully identifies and ascertains the property conveyed or devised. *Mayo v. Blount,* 23 N. C., 283; *L. Co. v. L. Co.,* 169 N. C., 94.

Applying these principles, it is clear that the line "running with the lower or north line of the lower or fifth lot eastward by the east corner thereof and the same course to the street near Ephraim Clayton's," whether the line B, I, or G, H, is the northern boundary of the land devised to Elizabeth Gudger and her children.

Is the northern boundary on the line B, I, or on the line G, H?

The evidence to be gathered from the will, including the codicils, is conclusive and satisfactory that it was not the intention of the testator to give to his daughter and her children the land formerly devised to his wife, and, therefore, that he did not intend to establish the line G, H, which is the northern line of the devise to the wife, as the northern boundary of the devise to the daughter.

In the first place, if it was his purpose to give to his daughter and her children the same property devised to his wife, he could have done so by describing it as the land on the east side of Main Street formerly devised to his wife, and the inference that he would have done so if this was his intention is reasonable when it is remembered that he was familiar with this mode of description, as he adopted it in the first

codicil, after the death of his wife, in which he disposes of "the property in said will, real and personal, given to her for life, and that property given to her absolutely."

Again, the testator had devised certain lots to his daughters Catherine Crook and Ruth Ripley, and the lines of these lots were known, established, and beyond dispute. In the devise to his wife he begins at A and runs north with Main Street to the lines of the lots devised to Catherine Crook and Ruth Ripley, while in the devise to Elizabeth Gudger and her children he begins at A and runs north with Main Street to the north line of the fifth lot.

Why this change in phraseology, and why this substitution of a line, which has raised the present controversy, for a line established by the testator and used by him in the former description, if it was intended that the two devises should cover the same property?

A comparison of the descriptions in the two devises shows marked and irreconcilable differences. In the general description in the devise to his wife he disposes of "the house and lots in which I now live in the town of Asheville, including the tavern and adjoining buildings, garden, orchard, and adjoining lots," and in the devise to his daughter of "the house and lots in which I live, including the tavern and outbuildings contiguous on the east side of Main Street."

If these two descriptions stood alone it could not be contended that the devise to the wife did not include *lots adjoining* the tavern lot, which are not mentioned in the devise to the daughter, and the particular description leads to the same conclusion.

Both devises begin at the letter A and run north with Main Street. The devise to the wife runs to the line of the lot devised to Catherine Crook and Ruth Ripley, which is at H, while that to Elizabeth Gudger and her children runs to the northern line of the fifth half-acre lot, which, counting from A, is at M.

The devise to the wife runs from H with the line of Catherine Crook and Ruth Ripley and with the line of the lot east of the Crook and Ripley lot (lot 52) to Spruce Street, giving a well-known and identified line from Main Street to Spruce Street, while the line in the devise to Elizabeth Gudger and her daughter runs with the northern line of the fifth lot eastward by the east corner thereof, which, if the line begins at B, would take it to R, and then to Spruce Street, and not with any other line, but following *the same course* as from B to R, indicating that there was no known line from R to Spruce Street, and the line from B to R, extended to Spruce Street, divides lot No. 54, an acre lot on Spruce Street.

If a line of another lot had run from the east corner of the fifth lot to Spruce Street the testator would have called for it as he did in

the devise to his wife, but if there was no line, his only recourse was to follow the "same course" as he did in the devise to the daughter.

The devise to the wife calls for Spruce Street *running by Ephraim Clayton's,* and the devise to the daughter Elizabeth for the Street *near Ephraim Clayton's,* and Ephraim Clayton's is opposite the terminus of the line from B to R extended to Spruce Street, and the calls for the orchard and the fence are merely descriptive and cannot control the line called for.

The presumption that a testator intends to dispose of all his property cannot affect the construction of the devise, for the reason that there was property of the testator which he did not dispose of specifically, and there is a residuary clause in the will.

We are, therefore, of opinion that the devise to Elizabeth Gudger and her children does not cover the same property devised to his wife, and this practically establishes the line of the devise at the line B, I, because there are only two possible contentions upon the record, and that is whether the line H, G or the line B, I is the northern boundary of the devise under which the plaintiffs claim.

If, however, we confined ourselves not to a comparison of the two descriptions, but to a consideration of the devise to the plaintiff alone, we would come to the same conclusion.

As we have heretofore shown, the general description in the devise to the plaintiffs contains nothing that would permit the extension of the line beyond the three lots on which the testator lived, and but for the language in the particular description, "including the five front half-acre lots," we would be compelled to say that the fifth lot means what it says, and that counting from A the line B, I would be this boundary; and we do not think the language quoted changes this construction of the devise, and that, on the contrary, it confirms it.

When the description begins at A and includes the five front half-acre lots running to the northern boundary of the fifth lot, the natural construction is that these five lots are between the beginning point and the northern boundary of the fifth lot, and as there is nothing in the devise to show a purpose upon the part of the testator to begin the count of the five lots at any other place than the beginning point, and there are eight half-acre lots on Main Street from A to H, and the fifth lot has for its northern boundary the line B, I, this is the line called for in the devise to the plaintiffs, beyond which they cannot claim.

This is also the construction placed on the devise by the parties, as it appears that the will of James M. Smith was probated in July, 1856; that Elizabeth Gudger lived on a lot adjoining that in controversy until her death in 1912, a period of fifty-six years, and that this action was not commenced until 1914.

The Century Dictionary defines "include," "to confine within something; to inclose; to contain; to comprise"; and this definition is accepted by the courts.

" 'Include' is defined as 'to confine within, to hold, to attain, to shut up'; and synonyms are 'contain,' 'inclose,' 'comprise,' 'comprehend,' 'embrace,' and 'involve.' Webst. Dict. So that, as used in Comp. Laws S. D., Par. 1409, providing that the sheriff shall be entitled to certain fees for summoning jurors, including mileage, the sheriff is not entitled to the mileage in addition to the fee." Neher v. McCook Co., 78 N. W., 998, 999, 11 S. D., 422.

The use of the word "including," in a legacy of $100, including money trusteed to a certain bank, cannot be construed as meaning in addition to, and, therefore, the devisee is not entitled to the sum of $100 in addition to the sum trusteed at the bank, but only $100, including such sum. Brainard v. Darling, 132 Mass., 218, 219.

A bequest of $14,000, including certain notes, etc., is to be construed as embracing or constituting the notes as a part of the $14,000, and not to mean that the notes are to pass in addition to that sum. Henry's Ex'r. v. Henry's Ex'r., 81 Ky., 342, 344. 4 Words and Phrases, p. 3499.

We, therefore, conclude that his Honor should have held as matter of law that the devise to the plaintiffs did not cover the land in controversy; but as the jury has found in accordance with this contention, it does not constitute reversible error to refuse to so hold. Johnson v. Ray, 72 N. C., 273.

We have, however, examined the exceptions relied on by the plaintiffs, and if we were of opinion that it was a question for the decision of a jury, we would hold that there was no error upon the trial. The only exception which would appear to be tenable is to the admission of the recitals in a certain deed, but it appears that his Honor instructed the jury carefully that they could not consider the recitals.

The evidence excluded, as to the declarations of Mr. Johnson, had no bearing on the issue involving the boundary, and at most was an expression of doubt as to the construction of the will.

No error.