MRS. OLIVIA SMITH ROOT, HUBERT STOCKARD AND WIFE, MARGARET VASS STOCKARD, AND ANNIE SMEDES VASS, PLAINTIFFS, v. ALLSTATE INSURANCE COMPANY, DEFENDANT.

(Filed 2 February, 1968.)

**1. Quasi-Contracts § 1—**

A quasi-contractual obligation is one created by law for reasons of justice and it rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another.

**2. Contracts § 12—**

When the language of a contract is clear and unambiguous, the court must interpret it as written.

**3. Boundaries § 1—**

The rule that a specific description of land controls over a more general description in the same conveyance does not apply when the specific description is insufficient or ambiguous.

**4. Contracts § 12—**

An ambiguity in a written contract is to be construed against the party who prepared the instrument.

**5. Contracts § 26;   Evidence § 32—**

The mutual agreement of the parties is the contract, and evidence of the unexpressed intent of one party in entering into the agreement is properly excluded.

**6. Same—**

Where the words of a contract are susceptible of more than one interpretation or where a latent ambiguity arises, evidence of prior negotiations of the parties to the written agreement may be competent for the purpose of throwing light on the intent of the parties.

**7. Easements § 3;   Landlord and Tenant § 5—**

In an action by a lessor of an office building to recover rent for the lessee's use of a basement as office space, the crucial contention of the parties was whether the basement was included in the premises demised in the lease. The furnace, hot water heater, air conditioning and other utilities were located in the basement; the lease provided that the lessor would be responsible for the furnishing of the utilities. *Held:* The evidence is insufficient to show that the lessee acquired an easement in the basement by implication.

**8. Landlord and Tenant §§ 5, 16—   Ambiguity in lease as to the property demised is for the jury.**

The lease agreement described the premises demised to the lessee as a building "erected at 747 Hillsboro St., comprising an area of 1772 square feet, for use as offices." The lessee contended that the lease conveyed all of the space in the building at that address, including a basement converted by lessee for office use. The lessor contended that the specific language of the lease conveyed only 1772 square feet of floor space, which

embraced the ground floor only. *Held:* The terms of the lease being ambiguous as to the property demised, it is for the jury to say what the parties meant, and the granting of lessee's motion of nonsuit in lessor's action to recover rent for the basement is error.

Bobbitt and Sharp, JJ., dissent.

Appeal by plaintiffs from *Braswell, J.,* Second June 1967 Regular Civil Session of Wake.

Civil action to recover rent on *quantum meruit* for use of basement in building owned by plaintiffs.

Plaintiffs (hereinafter referred to as lessors) entered into a lease agreement with defendant (hereinafter referred to as lessee) on 4 May 1960 whereby they leased property owned by them and described in the lease as follows:

> "A lot about 37 feet wide, fronting on Hillsboro Street, with a depth of about 200 feet on which a building approximately 27 feet 8 inches by 65 feet will be erected at 747 Hillsboro St., Raleigh, North Carolina, comprising an area of 1772 square feet, for use as offices. . . ."

The premises were leased for a period of five years commencing September 1, 1960 and expiring 1 September 1965, "at an annual rental at the rate of $3.50 per square foot, or a term rental of $31,010, payable in monthly installments of $516.83. . . ."

At the time of the execution of this lease the building to be used by defendant lessee had not been erected, and the building to be erected was to be constructed according to plans and specifications which lessors had prepared and which were approved by lessee, the same being included in the record on appeal. Other pertinent portions of the written lease, plans and specifications are:

Plans and Specifications: (1) They were entitled "An office building for Allstate Insurance Company, Hillsboro Street, Raleigh, N. C., Aldert Root, owner, (2) a large sign on top of the proposed building as follows: "Allstate," (3) The time clock to operate electrical sign on the building was to be installed in the basement area, (4) the plans provided no access to the basement exclusive of access to the first or main floor office space, (5) furnace, hot water heater, and similar utilities were to be located in the basement area, (6) there was to be 393 square feet of space in the basement area exclusive of the utilities to be housed therein.

Lease:

(1) Quiet Possession

2. So long as lessee performs its obligations, lessor covenants to it quiet and peaceful possession of the *leased space,* and the

right to use the same for general office purposes free of inter-
ference from noise.

(2) LESSEE'S OBLIGATIONS
   3. Lessee agrees as follows:
      (a) . . .
      (b) To use the premises in a quiet and orderly fashion with-
          out disturbance to *other tenants* in the building; . . .

(3) MAINTENANCE AND REPAIR
   13. Subject only to Lessee's liability to repair damage caused
   by the negligence or willful act of its agents, employees or oc-
   cupants, Lessor shall maintain and keep in repair *the building
   and leased premises.* . . .

(4) PARKING FACILITIES
   15. Lessee, its employees and visitors, shall have the right,
   *in common with other tenants in the building,* to use such park-
   ing facilities as may adjoin or be available to the *building.*

A renewal lease dated August 1, 1965 was executed by lessors to
lessee for an additional period of five years. This lease contained sub-
stantially the same provisions as the original agreement, except the
renewal lease described the premises as follows:

"747 Hillsboro Street, Raleigh, North Carolina, comprising
an area of 1772 square feet, for use as offices, . . ."

It was stipulated that lessors' sole witness, Aldert S. Root, Jr.,
was the lessors' agent who handled all transactions relating to the
lease between lessors and lessee. Mr. Root testified for lessors sub-
stantially as follows: That lessee had occupied the premises at 747
Hillsboro Street since November 1960. He identified the leases af-
fecting the property and stated that they were prepared by lessee
on a printed form. The lease stated that lessors would provide, among
other things, heat, water, air conditioning, and electricity. In June
or July 1966, Root went into the basement of the building and
noticed that a partition had been built in the basement and that two
desks, chairs, dictating equipment, additional lighting fixtures, shelv-
ing and office supplies had been placed in the basement. He there-
after wrote Mr. Jessup, an employee of lessee, demanding payment
for use of the basement area. Lessee refused to pay for the use of
this area. Suit was instituted by lessors to recover rent for the
basement area, and was heard at a regular session of Wake County
Superior Court. At the close of lessors' evidence lessee moved for
judgment as of involuntary nonsuit, which motion was allowed.
Plaintiffs appealed.

*Dupree, Weaver, Horton, Cockman & Alvis for defendant.*
*Maupin, Taylor & Ellis and Thomas P. McNamara for plaintiffs.*

BRANCH, J. The ultimate question presented by this appeal is whether the basement of the building located at 747 Hillsboro Street, Raleigh, N. C., was included in the premises demised in the written lease from plaintiffs to defendant.

Lessors' position is that lessee has no right to use the basement under the lease, and they admit that all of the rents required by the terms of the lease have been paid. The action is therefore based on an implied or quasi-contract.

"A quasi-contractual obligation is one that is created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent," *Cox v. Shaw*, 263 N.C. 361, 139 S.E. 2d 676, and "generally quasi or constructive contracts rest on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another, and on the principle that whatsoever it is certain that a man ought to do, the law supposes him to have promised to do. The obligation to do justice rests on all persons, and if one obtains money or property of others without authority, the law, independently of express contracts, will compel restitution of compensation." 17 C.J.S., Contracts, § 6, pp. 570, 571.

It is apparent that if the basement area is demised by the written lease, lessors' cause of action is without merit.

It is the position of lessee that the cause of action is ill-founded because of the well-recognized principle that an express contract precludes an implied contract with reference to the same subject matter. *Concrete Co. v. Lumber Co.*, 256 N.C. 709, 124 S.E. 2d 905. This contention is untenable, since the very basis of this controversy is whether the precise subject matter, that is, the basement, is included in the express contract.

It is a well-recognized principle of construction that when the language of a contract is clear and unambiguous, the court must interpret the contract as written, *Parks v. Oil Co.*, 255 N.C. 498, 121 S.E. 2d 850, and "The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Sell v. Hotchkiss*, 264 N.C. 185, 141 S.E. 2d 259.

In determining whether the basement area was demised by the lease, we first seek to determine the intention of the parties as shown by the whole written instrument. Lessee contends that the language of the lease clearly and without ambiguity conveys all of the space

in the building located at 747 Hillsboro Street, Raleigh, N. C., emphasizing that the language "comprising 1772 square feet" was simply a formula to determine the amount of rent for the entire building and premises. In support of this contention, lessee cites the case of *Miller v. Johnston*, 173 N.C. 62, 91 S.E. 593, where it is stated: " ' "Include" is defined as 'to confine within, to hold, to attain, to shut up"; and synonyms are "contain," "inclose", "comprise," . . .' "

In the case of *Hoskins Mfg. Co. v. General Electric Co.*, D.C. I11, 212 F. 422, a case involving patent law, the court compared the words "comprise" and "consist" and held that the latter is a more specific term, in that it means "to stand together," "to be composed of," or "made up of," while the former means "comprehend," "include," "contain," and "embrace." It is of interest to note that the terms recited in *Miller v. Johnston, supra,* to wit, "to confine within" and "to shut up" are not considered in this decision.

However, in the case of *Steigerwald v. Winans*, 17 Md. 62, the court construed a statute which provided that on an appeal from an order denying an injunction the clerk shall forthwith transmit the original papers, *comprising* the bill of petition, exhibits, and the court's order of refusal, to the Court of Appeals for determination. The court held that the word "comprising" should be construed "as determining *what are the original papers, which only are to be transmitted.* . . ." The Court noted that the word "comprising" does not under all circumstances imply inclusion of only the things enumerated. (Emphasis ours).

Upon substituting the dictionary definitions and synonyms adopted in *Miller v. Johnston, supra,* in lieu of the word "comprise" and upon a consideration of pertinent decisions, we can interpret the word "comprise" to be either a word of restriction or a word of enlargement.

Lessors, conversely, contend that the language of the lease is restrictive and specific and that it demised only 1772 square feet of floor space, which was identified by their witness as being located on the first floor of the building.

It is generally recognized in this jurisdiction that the law ordinarily prefers the specific to the general, and where there is a specific description of land, other words in the conveyance intended to describe generally the same lands, do not vary or enlarge the specific description. *Lee v. McDonald*, 230 N.C. 517, 53 S.E. 2d 845; *Von Herff v. Richardson*, 192 N.C. 595, 135 S.E. 533.

This rule is not controlling in the instant case because the rationale of the rule is that the law prefers that which is more certain to that which is less certain. Here, neither the general description, that is, "the premises located at 747 Hillsboro Street, Raleigh, N. C.,"

nor the description "comprising 1772 square feet" identifies or makes clearly specific the property demised.

"If the words employed are capable of more than one meaning, the meaning to be given is that which it is apparent the parties intended them to have." *King v. Davis,* 190 N.C. 737, 130 S.E. 707.

An examination of the entire written lease discloses many indicia of conflicting intent. Examples are: The term "leased building," indicating that the entire building was to be leased; the legend appearing on the plans and specifications, "An office building for Allstate Insurance Company, Hillsboro Street, Raleigh, N. C. Aldert Root, owner," indicating that the entire office building was to be used exclusively by lessee; the only access to the basement area of the building, without passing through the office space, is through an outside rear door which opens onto a stair landing which gives immediate access to the first floor office space, and, through a door, to steps leading to the basement. This indicates that the basement area was not planned for rental to any person other than lessee. On the other hand, terms of the lease indicating that demise of less than the entire building was contemplated by the parties to the lease are: "other tenants," "leased space," "leased premises," rather than the word "building"; use of the phrase "building and leased premises" without indication that the words are interchangeable.

The written lease was prepared by lessee, and in considering the contentions of the parties we are cognizant of the well-recognized rule that an ambiguity in a written contract is to be construed against the party who prepared the instrument. *Trust Co. v. Medford,* 258 N.C. 146, 128 S.E. 2d 141; *Jones v. Realty Co.,* 226 N.C. 303, 37 S.E. 2d 906.

At best, the written lease and the exhibits attached thereto leave it uncertain whether the parties intended for the lease to include the basement of the building. We are thus brought to lessors' assignment of error that the trial court erred in sustaining lessee's objection to questions asked of the witness Aldert Root as to whether or not it was his intention to include the basement in the lease and as to what took place at the negotiations between the witness and lessee's representative when the lease was negotiated in 1960. The judge properly refused to admit the evidence of the witness' unexpressed intention.

In the case of *Howell v. Smith,* 258 N.C. 150, 128 S.E. 2d 144, it is stated:

> " 'A contract, express or implied, executed or executory, results from the concurrence of minds of two or more persons, and its legal consequences are not dependent upon the impressions

or understandings of one alone of the parties to it. It is not what either thinks, but what both agree.' *Prince v. McRae,* 84 N.C. 674; *Overall Co. v. Holmes,* 186 N.C. 428, 119 S.E. 817, and cases cited; *Jackson v. Bobbitt,* 253 N.C. 670, 677, 117 S.E. 2d 806.

" '. . . The undisclosed intention is immaterial in the absence of mistake, fraud, and the like, and the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts. . . . ". . . the test of the true interpretation of an offer or acceptance is not what the party making it thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." Williston on Contracts, Third Edition, Vol. 1, § 94.' "

However, there is merit in appellants' exception concerning the judge's refusal to admit evidence concerning negotiations between the witness and defendant's representative. In this connection, the record discloses the following:

"Q. You did have some negotiations with a man by the name of Connor from Allstate, did you not?

A. Yes, sir.

Q. What took place at these negotiations?

Objection by Mr. Dupree, sustained. EXCEPTION No. 3.

(If allowed to answer, plaintiffs' witness, Aldert Root, would have testified as follows:

A. Allstate came to us and wanted to rent, roughly, 1800 square feet. They came to us through a man named Connor. I was negotiating for our side. Connor wanted a first-floor building only, nothing but a first-floor building, and he explained this on the grounds that he was operating a drive-in claim service, and they couldn't do business on any floor but the first floor, and that he wanted a storage space in the building on the first floor, and that he wanted that provided and he wanted a rough drawing to proceed from at the outset. So a rough drawing was provided to him and he approved that and subsequently we retained an architect who provided more detailed drawings, the ones which are on trial here, and these were also approved by Allstate; and as I have already testified, the total square footage area involved here on the first floor, that which they had verbally stated they would take, came to always at the 'the around or about,' never exact because the architect hadn't completed his drawings prior to that. Anyway, the total amount came to 1857 square feet. Then Allstate said 'we don't need the base-

ment.' 'We don't need the landing.' 'We're not gonna pay rent on that which we can't use and we can't use the landing because it is not usable office space to us on the first floor; neither are the stairs down to the basement; hence we're going to subtract them from the 1857 feet.' And which they did, and when you multiply that area together, comprising — let me see, consisting of the stairway, we come to eighty-five feet, and that subtracted from the 1857 leaves a total area of 1772 feet, which is all that Allstate would agree to pay for since they weren't using the rest of it. Does that answer your question?"

The general rule is that when a written instrument is introduced into evidence, its terms may not be contradicted by parol or extrinsic evidence, and it is presumed that all prior negotiations are merged into the written instrument. *Fox v. Southern Appliances,* 264 N.C. 267, 141 S.E. 2d 522; *Barger v. Krimminger,* 262 N.C. 596, 138 S.E. 2d 207.

A modification of the above stated rule is found in the case of *Knitting Mills v. Guaranty Co.,* 137 N.C. 565, 50 S.E. 304, where it is stated:

". . . The legal effect of a final instrument which defines and declares the intentions and rights of the parties cannot be modified or corrected by proof of any preliminary negotiations or agreement, nor is it permissible to show how the parties understood the transaction in order to explain or qualify what is in the final writing, in the absence of an allegation of fraud or mistake or *unless the terms of the instrument itself are ambiguous and require explanation. Meekins v. Newberry,* 101 N.C. 17; *Bank v. McElwee,* 104 N.C. 305; *Taylor v. Hunt,* 118 N.C. 168; *Moffitt v. Maness,* 102 N.C. 457 . . ." (Emphasis ours).

See also *Patton v. Lumber Co.,* 179 N.C. 103, 101 S.E. 613.

In 30 Am. Jur. 2d, § 1069, we find the following:

"Whenever the terms of a written contract or other instrument are susceptible of more than one interpretation, or an ambiguity arises, or the intent and object of the instrument cannot be ascertained from the language employed therein, parol or extrinsic evidence may be introduced to show what was in the minds of the parties at the time of making the contract or executing the instrument, and to determine the object for or on which it was designed to operate."

30 Am. Jur. 2d, § 1071, states, in part:

"If previous negotiations between the parties make it manifest in what sense the terms of an ambiguous contract are used, such negotiations may be resorted to as furnishing the best definition to be applied in ascertaining the intention of the parties. . . ."

"However, while previous transactions may be very properly taken into consideration to ascertain the subject matter of a contract and the sense in which the parties may have used particular terms, they cannot be received to alter or modify the plain language which the parties have used. . . ."

This jurisdiction has recognized that the office of a description is to furnish means of identifying the property to be conveyed by the instrument, and where the language is patently ambiguous, parol evidence is not admissible to aid the description. To the contrary, where a latent ambiguity occurs, that is, when the words of the instrument are plain and intelligible but leave it uncertain as to what property is embraced in the conveyance and presents a question of identification of the property, parol evidence is admissible to fit the description to the property sought to be conveyed. Such parol evidence cannot be used to enlarge the scope of the descriptive word. *Self Help Corp. v. Brinkley,* 215 N.C. 615, 2 S.E. 2d 889; *Redd v. Taylor,* 270 N.C. 14, 153 S.E. 2d 761.

". . . Every valid contract must contain a description of the subject-matter; but it is not necessary it should be so described as to admit of no doubt what it is, for the identity of the actual thing and the thing described may be shown by extrinsic evidence. . . ." *Green v. Harshaw,* 187 N.C. 213, 121 S.E. 456.

Although the words of the instrument are plain and intelligible, it is uncertain whether the basement of the area of the building was demised by the written lease. This constitutes a latent ambiguity which permits the introduction of parol evidence to aid in determining what property the parties intended to include in the instrument.

The admission of evidence of prior negotiations in the instant case does not contradict or vary the terms of the instrument but tends to show the intent of the parties as to whether the entire area was to be included in the lease or whether the space was to be leased on a square-foot basis. Therefore, the trial court erred in sustaining lessee's objection to that part of the testimony as to prior negotiations which tended to show intent of the parties.

Lessee further contends that even if the lease did not authorize the use of the basement, the judge correctly allowed its motion for

nonsuit, since it had an easement in the basement by implication.

In the case of *Manufacturing Co. v. Gable,* 246 N.C. 1, 97 S.E. 2d 672, the owner of a three-story building leased the second and third floors to the plaintiff and leased the first floor to other tenants. The lease prorated the cost of fuel and maintenance of the heating plant two-thirds to plaintiff and one-third to the other tenants. The Court held that the heating plant was an appurtenance included in the property leased, and stated:

> " '. . . It is a settled principle of the law of property that a conveyance of land, in the absence of anything in the deed indicating a contrary intention, carries with it everything properly appurtenant to, that is, essential or reasonably necessary to the full beneficial use and enjoyment of the property conveyed, and this principle is equally applicable to a lease of premises. In leases, as in deeds, "appurtenance" has a technical signification, and is employed for the purpose of including any easements or servitudes used or enjoyed with the demised premises. . . . Parol evidence is admissible to show the meaning of the term "appurtenances." ' "

See also *State v. Foster,* 196 N.C. 431, 146 S.E. 69.

Lessee cites in support of this contention the case of *Maiatico v. Stevens,* 125 A. 2d 275. This was an action by lessor to recover possession of two basement rooms which were not covered by lease of premises. Holding that the evidence sustained the finding that there was in contemplation of the parties when the lease was executed that lessee would continue to use the rooms for storage, etc., the Court stated:

> ". . . To pass by implication as an easement incidental to a leased portion of a building, the privileges which are exercised in portions not leased must be reasonably necessary and not merely convenient to a tenant's beneficial use and enjoyment of his leasehold. Or, it must be clear from all the surrounding circumstances that this was the use intended by the parties to the lease. . . ."

It is noted that in the Maiatico case the lease provided that tenant must keep clean "such portions of the building . . . as may be used incident to the operation of said restaurant. . . ." Further, there was parol evidence showing knowledge by lessor, when the lease was executed, that lessee had the use and enjoyment of the basement under a previous lease.

These cases are factually distinguishable from the instant case, in which the lease, plans and specifications reveal that lessors were

responsible for the heating, air conditioning and other utilities (all of which were located in the basement) for the office space, and that storage space was provided on the first floor. In the instant case there is no conclusive showing that the use of the basement was essential or reasonably necessary for the full and beneficial use of the property demised. Thus no easement passes by implication.

In the case of *Williams v. Insurance Co.*, 209 N.C. 765, 185 S.E. 21, defendant issued a policy against fire loss on premises described as the "one-story brick building . . . while occupied by tenants as stores . . . number 107 on the North side of East Church Street, Block No. ........, Rose Hill, N. C." The property consisted of one building, divided into three stores or compartments. Each of the stores was damaged by fire. Defendant contended that the policy covered only one store. The Court held that the policy was ambiguous as to property covered thereby, and stated:

> ". . . If contract is ambiguous, effect is for jury. *Montgomery v. Ring*, 186 N.C. 403; *Porter & Peck v. West. Const. Co.*, 195 N.C. 328. If writing leaves it doubtful or uncertain as to what the agreement was, parol evidence is competent to show and make certain what was the real agreement, which is for the jury. . . ."

It is stated in *Hite v. Aydlett*, 192 N.C. 166, 134 S.E. 419:

> " 'It is a well-established general rule that if the parties reduce their entire contract or agreement to writing, whether under seal or not, the court will not hear parol evidence to vary or change it, unless for fraud, mistake or the like; but if it appear that the entire agreement was not reduced to writing, or if the writing itself leaves it doubtful or uncertain as to what the agreement was, parol evidence is competent, not to contradict, but to show and make certain what was the real agreement between the parties; and in such a case what was meant, is for the jury, under proper instructions from the court.' Davis, J., in *Cumming v. Barber*, 99 N.C. 332."

Applying the rules of law set out above to the facts of instant case, we hold that the trial judge erroneously allowed defendant's motion for nonsuit. The case should be submitted to the jury under proper instructions.

Reversed.

BOBBITT and SHARP, JJ., dissent.