G. J. LANGENDERFER, Appellee,

v.

MIDREX CORPORATION, Appellant.

No. 80–1443.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 4, 1981.

Decided Sept. 24, 1981.

Robert W. King, Jr., Charlotte, N. C. (Robert D. Dearborn, Moore & Van Allen, Charlotte, N. C., on brief), for appellant.

A. Ward McKeithen, Charlotte, N. C. (Fleming, Robinson, Bradshaw & Hinson, P.A.; Michael A. Almond, Charlotte, N. C., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and SPROUSE,* Circuit Judge.

SPROUSE, Circuit Judge:

Midrex Corporation appeals from a $283,-610.06 judgment entered after a jury trial in favor of the plaintiff, G. J. Langenderfer, a former employee, for breach of an employment contract. The trial court correctly applied the law of North Carolina and the judgment is affirmed.

Midrex raises four issues on appeal: (1) whether the trial court improperly admitted parol evidence of an agreement to pay Langenderfer ¾ of one percent of its annual profits as a bonus; (2) whether the involved contract provided a cost-of-living raise; (3) whether the parties mutually agreed to a one-year extension of the employment contract; and (4) whether Langenderfer's recovery was barred or diminished by his failure to mitigate his damages.

Prior to January 1974 Midrex was a division of the Midland Ross Corporation with its headquarters in Toledo, Ohio, and Langenderfer was the head of one of Midrex's sales divisions. In early 1974, Midrex was acquired by Korf Industries, a German-owned steel producing firm, and it announced plans to move Midrex's headquarters from Toledo to Charlotte, North Carolina. Langenderfer was to be Assistant to the President at the new location.

Prior to the move, none of Midrex's management had formal, written contracts. But Midrex President Joseph Visnich, wary of the new owners, suggested that the members of his staff—Langenderfer and five vice-presidents—have formal contracts. Negotiations between Langenderfer and Midrex, with Visnich acting on behalf of Midrex, began in May 1974. On August 17, 1974, Langenderfer and Visnich signed an employment agreement in Charlotte, North Carolina. The written contract, effective February 1, 1975, called for a monthly salary of $3,333.34. Its expiration date was February 1, 1977, but it was extendable "for periods of one year upon the mutual agreement of the parties." The written contract provided, among other things, that Langenderfer would be entitled to participate in any executive bonus program the Company adopted. It contained no provision for cost-of-living increases.

Langenderfer was terminated as of June 30, 1977, five months after his initial contract expired, having worked for Midrex or its predecessors 41 years.

During the negotiation of his contract, Langenderfer learned that the contracts of the other members of Visnich's staff—the five vice-presidents—called for automatic annual bonuses of ¾ of one percent of the Company's annual profits. Langenderfer repeatedly stated during negotiations that he wanted the ¾ of one percent arrangement "the same as the others" on the President's staff. While the vice-presidents' contracts specifically gave them ¾ of one percent of Midrex's net profits, Langenderfer's contract stated only:

Employee shall be entitled to participate in any executive bonus program should the Company elect to adopt such a program.

Langenderfer was never paid a percentage-of-profits bonus. He, along with several other executives, received a discretionary bonus of $4,000 for 1975. He received no bonus for 1976 because, according to the Company, his performance during that year did not merit a bonus, and none for 1977, the year of his separation from the Company.

At trial, over defendant's objection, Langenderfer was permitted to relate to the

---

* Immediately prior to oral argument the third member of the panel discovered a disqualification and withdrew from further consideration of the case. With the consent of counsel, the case was submitted to the two remaining panel members.

jury oral representations allegedly made to him by Visnich concerning the bonus provision. Langenderfer testified that Visnich told him the bonus provision in his contract meant he would be treated like all the other people on his staff and that he would get the ¾ of one percent of the profits as a bonus. Midrex contends that the admission of this parol evidence was error.

Parol evidence, of course, is allowable to explain ambiguous contract provisions. *Williams v. Greensboro Fire Ins. Co.*, 209 N.C. 765, 185 S.E. 21 (1936). At the same time, however,

> [W]hile previous transactions may be very properly taken into consideration to ascertain the subject matter of a contract and the sense in which the parties may have used particular terms, they cannot be received to alter or modify the plain language which the parties have used.

*Root v. Allstate Insurance Company*, 272 N.C. 580, 158 S.E.2d 829, 835 (1968).

The first question, then, is whether the bonus provision in Langenderfer's contract was ambiguous. There is no question but that the Company had adopted two bonus programs—the percentage-of-profits received by Visnich and the five vice-presidents and the discretionary bonus several other executives received. Although there is some dispute in the record as to whether the percentage-of-profits plan was already in existence at the time Langenderfer signed his contract, and, therefore, could not have been a future plan as envisioned in his bonus provision, we find that the existence of two executive bonus plans created the requisite ambiguity under North Carolina law to support the trial court's action in admitting Langenderfer's parol testimony.

In his April 29, 1974, negotiating memorandum, Langenderfer asked for cost-of-living increases. When the first draft was silent on this subject, he complained to Visnich and repeated his request. The final draft also made no provision for the raises; Langenderfer testified he again complained

to Visnich and signed the contract only after being "assured by all that was holy that I would participate in the cost of living increases." Langenderfer was also allowed to testify that Visnich agreed that since he could not pay the $45,000 yearly salary Langenderfer requested, he would give $40,000 plus cost-of-living increases over a period of time.

Midrex contends that this parol evidence was not admissible since there was no provision in the contract relating to cost-of-living increases, and that, therefore, the jury's award of damages for this item must be reversed. While we agree that parol evidence cannot be admitted to establish a provision nowhere present in the contract, we affirm the award as to the cost-of-living increases on the basis of equitable estoppel.[1]

The frequently cited elements of equitable estoppel in North Carolina were originally set out in *Boddie v. Bond*, 154 N.C. 359, 70 S.E. 824 (1911):

> This estoppel arises when any one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.

70 S.E. at 826.

Langenderfer offered substantial evidence to establish the estoppel in this case: At the time Midrex moved to Charlotte, he was 64 years old, a lifelong resident of Toledo with extensive ties there, and hesitant to uproot his family and move to North Carolina when he was so close to retirement. The president of Korf Industries felt that Langenderfer's (as well as the five vice-presidents') continued employment with Midrex was necessary and strongly encouraged him to move to Charlotte. As an inducement to move, Visnich promised Langenderfer he would be enti-

---

1. Equitable estoppel may be proven by evidence otherwise excludable by the parol evidence rule. *Thompson v. Soles*, 42 N.C.App. 462, 257 S.E.2d 59 (1979), *modified and aff'd*, 299 N.C. 484, 263 S.E.2d 599 (1980).

tled to a ¾ of one percent bonus, plus cost-of-living increases; he signed the contract and moved himself and his family to Charlotte in reliance upon these representations and promises.

Midrex contends that the theory of equitable estoppel was not submitted to the jury, or, in the alternative, that the jury made no finding on this issue.

In his instructions to the jury, the trial court included comments on equitable estoppel,[2] clearly instructing it on the elements of misrepresentation, reliance and prejudice. He did not, however, include the element of intent—that the party making the misrepresentation must intentionally or through culpable negligence induce the injured party to change position. The trial court's instruction was therefore deficient in this one respect. This deficiency, however, was cured by the operation of Fed.R. Civ.P. 49.

█ The jury in this case was given a list of specific questions to answer (all of which referred to the contract itself, none to the elements of equitable estoppel), and no form of general verdict was provided for jury use. Therefore, the special interrogatories here must be treated as having been submitted pursuant to section (a) of Fed.R. Civ.P. 49. Rule 49(a) provides that when a court requires a jury to return only a special verdict in the form of a special written finding upon each issue of fact, each party has the right to request additional factual issues for jury determination. A party waives its right to have any issue not re-

quested to be submitted to the jury and not tried by it and the trial court is deemed to have made a finding on the issue in accord with the judgment on the special verdict. *Hyde v. Land-of-Sky Regional Council,* 572 F.2d 988 (4th Cir. 1978).

Midrex also claims it was error for the jury to find Langenderfer was entitled to a full year's extension of his contract.

The contract contained a specific clause stating:

> The term of this Agreement shall be from February 1, 1975 to February 1, 1977. This Agreement may be extended for periods of one year upon the mutual agreement of both parties.

Langenderfer claimed at trial that it was crucial to him that, in whichever year he retired, it be in the month of February. This, coupled with his thirty-nine weeks' termination pay, would satisfy his social security requirements for the entire year and would result in his receiving substantially higher benefits upon retirement. He claimed that Midrex knew this.

In January 1977, Midrex's president, Ekhart Goette, indicated that the budget might not permit keeping Langenderfer for a whole year, and at one point indicated his contract would be extended for six months only.

On Monday, February 2, 1977, the day after the contract was to expire, Langenderfer was to be a witness in some unrelated litigation involving Midrex. Langenderfer testified that on Friday, January 30,

2. The trial judge gave the following instructions on equitable estoppel:

> Then there's a broad notation of what we call equitable estoppel, which means if you give somebody to understand that something is going to be done one way or if you know he's going to take it that way or is reading it that way and allow him or induce him to change position on the strength of an erroneous interpretation, then the conduct of and other evidence that relates to the situation can be considered. It's an equitable proposition where the purpose of the jury is to try to attain a fair result, but the conduct of both parties must be considered. In order for a defendant to be estopped from relying upon the written agreement, there has to be shown some misrepresentation or statement of a material fact or promise and that this misrepresentation or incomplete representation was accepted in good faith by the other party and that he reasonably relied upon it and not negatively relied upon it and, in that sense, changed his position or gave up something to his prejudice. Then if you find those things occurred, then the outside agreement or understanding can be shown.
> [I]t's up to you to determine from the evidence whether ... there were any statements made contrary to the letter of the contract but statements on which the plaintiff, with the qualifications I've given you, reasonably relied to his prejudice.

Goette stopped by his office and asked him if he were going to Charleston, South Carolina, to be a witness in the trial, and he replied that he had every intention of doing so. Langenderfer stated that Goette, as he was leaving, told him not to worry about his contract—that they were going to extend it.

Langenderfer assumed from this conversation that his contract would be extended for a year, although he conceded a full-year's extension was never expressly agreed to. Two weeks later, on February 15, 1977, Langenderfer was advised his employment would be extended five months.

There is no contention that the evidence relating to the extension of Langenderfer's contract was improperly admitted or improper for the jury's consideration—only that there was insufficient evidence from which the jury could have found that the parties agreed to a one-year extension—we disagree and accordingly affirm the verdict as to this issue.

Finally, Midrex contends that Langenderfer lost any right to recover damages by his failure to mitigate the damages. Langenderfer admitted he had received job offers, but that permanent employment was not acceptable to him in light of his age. He testified he had intended to retire upon the end of his employment with Midrex. Whether an injured party exercises "reasonable diligence to minimize his loss is a question for the jury to determine...." *Turner Halsey Co., Inc. v. Lawrence Knitting Mills, Inc.*, 38 N.C.App. 569, 572, 248 S.E.2d 342, 345 (1978). Since this issue was properly submitted to the jury and since the quantum of evidence was such that the jury could have ruled for either Langenderfer or Midrex, we likewise decline to disturb this portion of the judgment.

The judgment of the district court is, therefore, affirmed.

*AFFIRMED.*